PETER BAKER *vs.* HENRY L. TIBBETTS.

Worcester. October 3, 1894. — January 1, 1895.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Conduct leading Another into Trap — Negligence — Principal and Agent.*

In an action for personal injuries occasioned by an explosion in the basement of a building, it appeared that the building had been conveyed by A. to the defendant as trustee for A.'s creditors; that the defendant, by his agent B., had made a written lease of the building to C., who had made an agreement for a sublease of the basement to D., to take effect on a certain day; that in the basement were engines, boilers in a cement-lined pit, and in the boilers was some bisulphide of carbon; that, at the time of the lease to C., B. agreed to remove everything in the basement, except a certain engine and a shaft, and retained a key to the basement; and that later B. asked that certain things might remain there, and C. assented if D. did not object. There was evidence that, before the sublease took effect, D. and the plaintiff, who was interested in D.'s business, went to B., just outside the basement, and asked him what things he wanted to have remain; and that B. answered, "Come in and I will show you." It further appeared that before this time B. had removed some of the things, and had drawn off some of the bisulphide of carbon, but in the process some of it had been spilled upon the bottom of the pit; and that the parties went into the basement, and an explosion happened, which according to the plaintiff's testimony was caused by his accidentally knocking a piece of iron into the pit and making a spark. The plaintiff and D. denied that they had been told by any one of the presence of the explosive. *Held,* that there was evidence sufficient to be submitted to the jury upon the question whether B., in his alleged invitation to the plaintiff, was acting on behalf of the defendant, and within the scope of his authority.

HOLMES, J. This is an action of tort for personal injuries, seeking to charge the defendant on the ground that by his agent he invited the plaintiff into a place of hidden danger, that is to say, a place where there was a dangerous explosive unknown to the plaintiff, and thereby led him into a trap. The place in question was the basement of a building, which had been conveyed by one Aldrich to the defendant as trustee for Aldrich's creditors. The defendant by his agent Stearns had made a written lease of the building to Sherman, and Sherman had made an agreement for a sublease of the basement to Ryan, to take effect on October 1, 1892. In this basement were engines, boilers in a cement-lined pit, and so forth, and in the

boilers was some bisulphide of carbon, the explosive mentioned above. At the time of the lease to Sherman, Stearns agreed to remove everything in the basement except a Fitchburg engine and a large shaft, and retained a key to the basement. Later, Stearns asked that certain things might remain there. Sherman assented if Ryan did not object. There was evidence that, on September 19, Ryan and the plaintiff, who was interested in Ryan's business, went to Stearns, just outside the basement, and asked him what things he wanted to have remain, and that Stearns answered, "Come in, and I will show you." Before this time Stearns had removed some of the things, and had drawn off some of the bisulphide of carbon, but in the process some of it had been spilled upon the bottom of the pit. The parties went into the basement, and an explosion happened. According to the plaintiff's testimony, it was caused by his accidentally knocking a piece of iron into the pit, and making a spark. The plaintiff and Ryan denied that they had been told by any one of the presence of the explosive. On the other hand, there seems to be no reasonable doubt that Sherman knew as much as Stearns did.

Assuming that to leave any of the bisulphide of carbon in the pit was negligent, in the only sense in which it could be so as towards the plaintiff, that is to say, that it was conduct manifestly endangering the safety of those on the premises without warning; still, if Sherman, the person having sole control of the premises, knew the precise condition of things and appreciated the danger, the defendant would not necessarily be answerable to persons whom Sherman might see fit to invite there. *Mellen* v. *Morrill*, 126 Mass. 545. *Clifford* v. *Atlantic Cotton Mills*, 146 Mass. 47. The ground on which the defendant must be held in this case, if at all, is that he invited and induced the plaintiff to enter a place known to the defendant to be dangerous, without warning the plaintiff.

The defendant puts some reliance on the fact that by an earlier recorded deed Aldrich had conveyed the premises to a third person, and it is suggested that the boilers and bisulphide of carbon had been left on the premises by a former tenant, and never had belonged to Aldrich. These facts, if true, are not a defence by themselves. If the defendant assumed to deal with

the land and chattels, if he was seised of the one and took control of the other, his liability would not be prevented by a defect in his title.   *Earle* v. *Hall,* 2 Met. 353, 358–360. *Learoyd* v. *Godfrey,* 138 Mass. 315, 323.   Neither does the fact that he held the title to the property as a trustee reduce him to the position of an intermediate agent between the real principal and the person actually causing the damage, as in *Stone* v. *Cartwright,* 6 T. R. 411.   See *Shepard* v. *Creamer,* 160 Mass. 496.   The only question of law is whether Stearns, in his alleged invitation to the plaintiff, was acting on behalf of the defendant, and within the scope of his authority.

We have come to the conclusion that there was evidence sufficient to be submitted to the jury.   It is admitted that Stearns had authority from the defendant to make the lease. As incident to that authority, he might agree on behalf of the defendant to remove from the premises chattels not included in the lease, whether they belonged to the defendant or not.   But with regard to the title of the defendant to the things which were to be removed, it is to be noticed that the deed which he accepted purported to convey them, and that there is ground, therefore, for the argument that, rightly or wrongly, he assumed to deal with them as his own.   Again, even if technically the property in question passed by the lease, so that an oral agreement made at the same time could not be enforced, still, if in fact the parties to the lease were carrying out the oral understanding, it would be going too far to say that the want of legal effect in the understanding carried with it a want of authority from the defendant to Stearns to carry it out.   The jury might find that Stearns had authority to except from the lease, and on behalf of the defendant to remove, the articles, or to leave them on the premises, and that he was proceeding to arrange about them when the accident happened.   If so, the fact that he did it in a way not technically sufficient, in case objection had been made by the tenant, would not be a defence, inasmuch as the tenant did not object but assented to the arrangement.   If the jury should find the state of facts which we have imagined, and of which there was some evidence, they might find that the invitation to the plaintiff was reasonably incident to settling what must be carried away and what must be left on the premises, and in that event the plaintiff's right to recover would be established.

The jury have found, in answer to questions propounded to them, that the explosion was caused by the falling of a piece of iron or other heavy substance into the pit, and that it was caused by the ordinary walking about in the basement of the plaintiff and others. They also have found the amount of the damages. By the terms of the report, the issues already determined are not to be retried.                         *Case to stand for trial.*

*W. Thayer,* (*H. W. Cobb* with him,) for the plaintiff.

*J. C. Burke,* for the defendant.