## POWERS v. MASSACHUSETTS HOMŒOPATHIC HOSPITAL.

(Circuit Court of Appeals, First Circuit. May 27, 1901.)

### No. 330.

**1. CHARITIES—PUBLIC HOSPITAL—RELATION TO PATIENTS.**

The fact that a public hospital, chartered as a charitable corporation, exacts or receives a pecuniary consideration from a patient, does not affect its character as a charitable institution, nor its rights or liabilities as such, in relation to such patient.

**2. SAME—LIABILITY TO PATIENTS—NEGLIGENCE OF NURSE.**

A patient in a public hospital, chartered as a charitable corporation, although under private management, cannot recover from such corporation for injuries resulting from the negligence of a nurse employed in its hospital, and in whose selection due care was used; there being an implied agreement arising from the acceptance by the patient of the corporation's bounty that it shall not be liable for the acts of such servants in administering the charity.

In Error to the Circuit Court of the United States for the District of Massachusetts.

Thomas H. Russell and Arthur H. Russell, for plaintiff in error.

Charles P. Greenough (Julian Codman, on the brief), for defendant in error.

Before COLT, Circuit Judge, and BROWN and LOWELL, District Judges.

LOWELL, District Judge. This is a suit brought by a patient to recover damages for an injury alleged to have been sustained by the

negligence of a nurse in the hospital. There was evidence that the plaintiff had a skin unusually sensitive, and that a rubber bag full of hot water was placed by the nurse against her side, and left there for some time. At the trial in the circuit court the learned judge ruled that the plaintiff could not recover, and directed a verdict for the defendant. 101 Fed. 896. To this ruling the plaintiff duly excepted.

That the defendant is a charitable corporation admits of no doubt. This was expressly recognized by the legislature of Massachusetts in chapter 358 of the Acts of 1890, and was decided in McDonald v. Massachusetts General Hospital, 120 Mass. 432, 21 Am. Rep. 529, the defendant there differing from the defendant here in no respect material to this case.

The plaintiff was what is sometimes called a "paying patient," the rate of her payment being $14 a week. Upon this ground her counsel has sought to distinguish her case from that of a patient in the hospital who pays nothing. In our opinion, the difference is immaterial. As has been said, the defendant was a charitable corporation; that is, a corporation organized exclusively for charity. That the ministrations of such a hospital should be confined exclusively to the indigent is not usual or desirable. Those of moderate means from necessity, and not a few rich people from choice, resort to great charitable hospitals for treatment, especially in surgical cases. Throughout the world this is the custom in these institutions, whether they are maintained by individual, religious, or municipal charity. From patients who are not indigent, a payment is commonly permitted or required. Commonly, and in the case at bar quite manifestly, this payment does not make full pecuniary compensation for the services rendered. Those who make a considerable payment not infrequently receive in some respects a more expensive service than do those who make a small payment or none at all; but the payment required is usually calculated upon the patient's ability to pay, rather than upon the whole cost of the treatment he receives. That this was the defendant's rule appears plainly from its printed form of application, which it required all applicants to fill out alike, whether they paid something or nothing. In this form the inquiry concerning payment was stated as follows: "How much per week applicant can pay,"—thus indicating that the amount of the contribution was to be determined, not by the value or cost of the service rendered, but by the ability of the patient to aid the charitable purposes of the hospital. In our opinion, a paying patient in the defendant hospital, as well as a nonpaying patient, seeks and receives the services of a public charity.

That such a hospital in its treatment of a rich patient shall be held to a greater degree of care than in its treatment of a pauper is not to be tolerated. Certain luxuries may be given the former which the latter does not get, and this for various reasons; but the degree of protection from unskilled and careless nurses must be the same in both cases. Again, it would be absurd to make the defendant's liability for an accident, like that here alleged, depend upon the payment of that insignificant proportion of the cost of the service

rendered which in some cases may properly be required from a poor man or woman. We are of opinion that this case stands as if the plaintiff had been admitted without any payment whatsoever.

We have to determine, then, if a patient admitted to a hospital maintained for charity can recover judgment against that hospital for injuries caused by the negligence of a nurse employed therein. There is a great weight of authority in favor of the defendant in the case put, but the courts have differed so widely in their reasoning that a somewhat extended examination is necessary, both of the cases decided and of the principles upon which they rest. The liability of the defendant for which the plaintiff contends is the liability of a master for the torts of his servant. "The master is answerable for every such wrong of the servant or agent as is committed in the course of the service and for the master's benefit, though no express end or profit of the master be proved." Barwick v. Bank, L. R. 2 Exch. 259, 265. At one time it seems that the master's profit was deemed a necessary element. "The maxim of respondeat superior is bottomed on this principle, that he who expects to derive advantage from an act which is done by another for him must answer for an injury which a third person may sustain from it." Hall v. Smith, 2 Bing. 156, 160. As is said in Pol. Torts (4th Ed.) pp. 67, 88, this rule belongs wholly to the modern law, and no reason for it, at any rate no saitsfying one, is commonly given in our books. It is in some sense an exceptional rule to begin with, and is itself subject to several exceptions. With some of these exceptions we have to concern ourselves.

Many cases hold that public or municipal corporations are not liable for some of the torts of their servants, though committed in the course of their service. Thus, in Benton v. Boston City Hospital, 140 Mass. 13, 1 N. E. 836, 54 Am. Rep. 436, it was said: "The trustees are a body created for the performance of a duty which, under the authority of the statute, the city of Boston has assumed for the benefit of the public, and from the performance of which no profit or advantage is derived, either by the trustees or by the city." In this case the trustees were held not liable for injury to a patient caused by the negligence of the superintendent. To the same general effect are City of Richmond v. Long's Adm'rs, 17 Grat. 375, 94 Am. Dec. 461; Maia's Adm'r v. Eastern State Hospital, 97 Va. 507, 34 S. E. 617, 47 L. R. A. 577; Sherbourne v. Yuba Co., 21 Cal. 113, 81 Am. Dec. 151; Murtaugh v. City of St. Louis, 44 Mo. 479. The cases just cited all resemble the case at bar, in that the plaintiff there, as here, sought to recover for negligence or malpractice in a hospital not maintained for profit; but the principle upon which they rest has no essential connection with hospitals or malpractice, but is applicable equally to many other kinds of damage. Thus the leading case in Massachusetts upon the subject is Hill v. City of Boston, 122 Mass. 344, 23 Am. Rep. 332, where the action was for damage caused by the defective construction of a school house, and the case most commonly arising is probably that concerned with damage caused by a defective highway. In different jurisdictions the liability of municipal corporations for the negligence of their

employés' is variously limited. Shear. & R. Neg. §§ 253, 255, 289. See City of Detroit v. Osborne, 135 U. S. 492, 10 Sup. Ct. 1012, 34 L. Ed. 260. The liability is determined generally by the laws of the states establishing and regulating the municipal corporations in question. City of Detroit v. Osborne, supra. See Workman v. City of New York, 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314. The principle upon which the municipality is excused from liability for certain injuries done by its servants is this: The municipality is acting as an agency of the sovereign, and thus acting it enjoys some part of the sovereign's immunity from suit. The cases above referred to, however much they resemble the case at bar in some of their facts, yet have no bearing upon its decision. The defendant here is in no sense an agency of the sovereign. It is a public charity, but is not a political or municipal corporation. Yet, as some of the cases cited have been referred to in discussing the liability of public charities under private management like this defendant, it has seemed best to refer briefly to the cases in order to distinguish them. Certain English cases have been urged even more specifically. In Duncan v. Findlater, 6 Clark & F. 894, it was held that the trustees appointed under a public road act were not responsible for damage caused by the negligence of those employed in making or repairing the road. The decision might have been rested upon the principle just referred to regarding municipal and political bodies. In delivering his opinion, however, Lord Cottenham said:

"The law is stated to be that the road fund is liable for the misconduct of any person employed by the road trustees. This direction assumes that the act done was an act not within the provisions of the statute; that it was not done in consequence of those provisions; for otherwise the direction would be in that respect improper, since whatever is done under the authority of the statute gives no right of action. If that was not so, the result would be that all the damages, though not arising from any act done by the immediate authority of the road trustees, would be liable to be compensated out of the trust fund,—a proposition which certainly cannot be supported by the law which regulates the liability of master and servant."

By this language, and other which need not be quoted, Lord Cottenham was supposed to have held that the action could not be maintained against the road trustees in their corporate capacity, for the reason that the fund in their hands was impressed with a trust incompatible with its distribution among persons damaged by the negligence of their servants. See Feoffees of Heriot's Hospital v. Ross, 12 Clark & F. 507, a case which will presently be discussed. While the point actually decided in Duncan v. Findlater has never been overruled (indeed, the house of lords never overrules its own decisions), yet the principle supposed to be laid down by Lord Cottenham has been distinctly repudiated. Mersey Docks & Harbour Board Trustees v. Gibbs, L. R. 1 H. L. 93. Whatever may be the limit of the liability of a political or municipal body in Great Britain for the torts of its servants, that limit is now in no way determined by any doctrine concerning the application of a trust fund The historical origin of the doctrine may probably be found in Russell v. Men of Devon Co., 2 Term R. 667, 672, and Hall v. Smith, 2 Bing. 156.

There is another class of cases in which the courts of this country have held that a railroad company, having in its regular employ physicians and surgeons whose duty to the corporation requires them to care for the sick and injured among the corporation's employés, is not liable to those employés for the malpractice or other negligence of these medical men. Railroad Co. v. Howard, 45 Neb. 570, 63 N. W. 872; Clark v. Railway Co., 48 Kan. 654, 29 Pac. 1138; Quinn v. Railroad Co., 94 Tenn. 713, 30 S. W. 1036, 28 L. R. A. 552, 45 Am. St. Rep. 767; Railroad Co. v. Price, 32 Fla. 46, 13 South. 638; Eighmy v. Railway Co., 93 Iowa, 538, 61 N. W. 1056, 27 L. R. A. 296; Railroad Co. v. Artist, 9 C. C. A. 14, 60 Fed. 365, 23 L. R. A. 581. The obligation of the railroad has been said to extend no further than the employment of doctors competent to do the work proposed. It has also been said that the doctor is not the servant of the corporation, for the reason that, in treating the patient, he does not take his orders from the corporation, but is guided altogether by his own judgment. "The relation of master and servant exists only between persons of whom the one has the order and control of the work done by the other. A master is one who not only prescribes to the workman the end of his work, but directs, or at any moment may direct, the means also, or, as it has been put, retains the power of controlling the work; and he who does work on those terms is in law a servant, for whose acts, neglects, and defaults, to the extent to be specified, the master is liable." Pol. Torts (4th Ed.) p. 72.

There is force in the argument that, by the understanding of both railroad and employé, the latter, in permitting himself to be treated by the railroad's doctor, intrusts his person to the skill of the individual doctor rather than to any supposed skill of the railroad; provided, at any rate, that the doctor selected by the railroad is skilled in his profession. The class of cases just mentioned has a close resemblance to the case at bar, though there are differences. In the cases cited, the negligence was that of the doctor; in the case at bar, that of a nurse. To hold a nurse to be the servant of the corporation is easier than to hold the doctor, and yet in neither case is the relation altogether that of ordinary service. A nurse, in her treatment of the patient, hardly takes her professional orders from the railroad's superintendent or from its ordinary officials, but rather from the doctor in charge. On the other hand, the railroad is not a charitable corporation, and in tendering medical aid to its employés, even when that is not called for by the contract of employment, may perhaps be supposed to act for purposes not purely charitable. So far as is known, there is no case which affirms the liability of the railroad under the circumstances stated. It has been held that the owners of a vessel, though required by statute to provide medical care and medicines for their passengers, are yet not liable for the malpractice of the doctor employed, provided there was no negligence in selecting him. Allan v. Steamship Co., 132 N. Y. 91, 30 N. E. 482, 15 L. R. A. 166, 28 Am. St. Rep. 556. See Laubheim v. De Koninglyke Neder Landsche Stoomboot Maatschappy, 107 N. Y. 228, 13 N. E. 781, 1 Am. St. Rep. 815.

If the railroad and ship cases rest upon the principle that a doctor is not the servant of the corporation which employs him, they have little bearing on the case at bar. If, on the other hand, they rest upon a principle that those who voluntarily receive medical aid, gratuitously given, cannot recover against the giver except for his negligence in selecting incompetent agents, their bearing is considerable.

We come now to the cases precisely or substantially in point. In McDonald v. Massachusetts General Hospital, 120 Mass. 432, 21 Am. Rep. 529, it was held that a patient could not recover for damage caused by the negligence or incompetence of a hospital interne or by the negligence of an attending surgeon. In delivering the opinion of the court, Mr. Justice Devens said:

"The defendant was a public charitable institution under the laws of the commonwealth. The object for which it was incorporated was to provide a general hospital for sick and insane persons. St. 1810, c. 94. Its funds are derived from grants and donations made by the commonwealth from profits which it is entitled to receive from the Massachusetts Hospital Life Insurance Company and other companies incorporated in the commonwealth, and from the grants, devises, donations, bequests, and subscriptions of benevolent persons, and from the board of paying patients. While the price of board is placed as low as the funds of the hospital will permit, patients who are there received are expected to pay as nearly as possible according to their own circumstances and to the accommodations they receive. In addition to the accommodations provided for such patients, a certain number of free beds are furnished from the general funds of the institution and from donations made especially for this object, the occupants of which are not expected to pay anything. Regulations of Hospital, c. 15, §§ 1-4. Of one of these beds the plaintiff was an occupant. The corporation has no capital stock, no provision for making dividends or profits, and whatever it may receive from any source it holds in trust to be devoted to the object of sustaining the hospital and increasing its benefit to the public, by extending or improving its accommodations and diminishing its expenses. Its funds are derived mainly from public and private charity. Its affairs are conducted for a great public purpose, that of administering to the comfort of the sick, without any expectation, on the part of those immediately interested in the corporation, of receiving any compensation which will inure to their own benefit, and without any right to receive such compensation. This establishes its character as a public charity. Jackson v. Phillips, 14 Allen, 539. The fact that its funds are supplemented by such amounts as it may receive from those who are able to pay wholly or entirely for the accommodation they receive does not render it the less a public charity. All sums thus obtained are held upon the same trust as those which are the gifts of pure benevolence. Gooch v. Association, 109 Mass. 558. Nor do the facts that the trustees, through its agents, are themselves to determine who are to be the immediate objects of the charity, and that no person has individually a right to demand admission to its benefits, alter its character. All cannot participate in its benefits. The trustees are those to whom is confided the duty of selecting those who shall enjoy them, and prescribing the terms upon which they shall do so. If this trust is abused, the trustees are under the superintending power of this court as a court of equity, by virtue of its authority to correct all such abuse, and the interest of the public therein—that is to say, of the indefinite objects of the charity—may be represented by the attorney general. Sanderson v. White, 18 Pick. 328, 29 Am. Dec. 591; Attorney General v. Old South Soc. in Boston, 13 Allen, 474."

See, also, Benton v. Boston City Hospital, 140 Mass. 13, 1 N. E. 836, 54 Am. Rep. 436.

In other cases arising in Massachusetts corporations have been held liable for the expressed reason that they were not public charities. Donnelly v. Association, 146 Mass. 163, 15 N. E. 505; Chapin v. Holyoke Y. M. C. A., 165 Mass. 280, 42 N. E. 1130; Newcomb v. Boston Protective Department, 151 Mass. 215, 24 N. E. 39, 6 L. R. A. 778.

Considerations similar to those quoted from McDonald v. Massachusetts General Hospital were suggested in Railroad Co. v. Artist, 9 C. C. A. 14, 60 Fed. 365, 23 L. R. A. 581; Downes v. Harper Hospital, 101 Mich. 555, 60 N. W. 42, 25 L. R. A. 602, 45 Am. St. Rep. 427; Haas v. Society, 6 Misc. Rep. 281, 26 N. Y. Supp. 868; Williams v. Industrial School (Ky.) 24 S. W. 1065; Maia's Adm'rs v. Eastern State Hospital, 97 Va. 507, 34 S. E. 617, 47 L. R. 'A. 577; Perry v. House of Refuge, 63 Md. 20, 52 Am. Rep. 495. As we understand the reasoning, it amounts to this: All the funds of a public charitable hospital are held in trust for a particular charitable purpose. It is a breach of trust to apply them to any other purpose. The payment of damages recovered for the negligence of the hospital servants is not within the terms of the trust. Hence the funds cannot be employed for that payment, and, if the funds cannot be so employed, a bare judgment against the corporation is nugatory, and should not be permitted.

If this proposition is true, then, as suggested by the learned judge who presided at the trial below, it follows that if the defendant, by its servants, should negligently permit the staircase of a building from which it derives a profit to fall out of repair, it would not be liable for damage suffered by reason of this negligence. It follows also that a person walking along the street, and injured by the fall of a stone cornice negligently maintained above the sidewalk, can or cannot recover for the damage suffered, according as the building from which the stone falls is the property of a private individual or of a public charity. Indeed, the principle extends even further than this. There is no less impropriety in diverting funds impressed with a trust for the benefit of individuals than in diverting those impressed with a trust for a public charity. Yet the effectual though indirect liability of a private trust fund for the torts of those concerned in its management is undoubtedly recognized. It is true that a suit cannot be maintained against a trustee, as such, for torts committed in the management of the trust property. The suit is brought against the trustee as an individual. The judgment and execution run against him individually. When these are satisfied, however, the trustee is reimbursed from the trust estate, unless individually at fault. Shepard v. Creamer, 160 Mass. 496, 36 N. E. 475; Baker v. Tibbetts, 162 Mass. 468, 39 N. E. 350; Benett v. Wyndham, 4 De Gex, F. & J. 259. The trust fund is protected from immediate levy to satisfy the execution, not because of its complete immunity, but rather from technical reasons connected with the legal estate of the trustee in the property. Its technical immunity affords it no ultimate protection. Indeed, the law on this point is so plain that no case can be found in the Massachusetts Reports expressly sanctioning the payment from a private trust fund of damages for a

tort committed in the administration of the trust property, though the practice must be of weekly occurrence in this city of Boston. Practically the trustee generally satisfies the judgment by a payment directly from the trust fund, or compromises the claim without any judgment at all. The merely technical immunity of a private trust fund from execution upon a judgment recovered in an action of tort affords no reason for the real immunity of the funds of a charitable corporation where the technical considerations do not apply. That the funds of a public charity may be diverted to pay for some torts committed in the administration of the fund has often been decided. Stewart v. Harvard College, 12 Allen, 58; Bishop v. Trustees, 1 El. & El. 697; Blacchinska v. Howard Mission, 56 Hun, 322, 9 N. Y. Supp. 679. See Davis v. Society, 129 Mass. 367, 37 Am. Rep. 368; Gilbert v. Corporation of Trinity House, 17 Q. B. Div. 795. If those in charge of a hospital unlawfully permit the escape of filth upon neighboring land, or close a right of way across the premises of the hospital, may not the corporation, in some cases at least, be sued in tort? We think the question answers itself.

If it be sought to charge a trust fund with payment for a tort committed by the trustee and unconnected with the trust property, doubtless the argument just quoted would be unanswerable. For example, if the trustees of the Massachusetts General Hospital hold a separate fund devised for the support and care of the insane at Waverly, that fund cannot be levied upon to satisfy a judgment recovered for an injury committed in the hospital maintained in Boston for medical and surgical cases, and vice versa; but, where a charitable corporation is otherwise liable for a tort committed in the administration of its trust, we see no sufficient reason why the trust fund may not be levied upon in satisfaction of the execution. We are unable, therefore, to agree with the proposition which altogether exempts a trust fund from liability for the torts of those concerned in its administration.

It remains to notice the case of Feoffees of Heriot's Hospital v. Ross, 12 Clark & F. 507, often cited in the reports of this country, though strangely little noticed by the courts of Great Britain. That was a suit against the trustees of a public charitable boarding school in their corporate capacity, for improper failure to admit an applicant to the benefit of the school. Lord Cottenham said:

"The question then comes to this, whether by the law of Scotland a person who claims damages from those who are managers of a trust fund, in respect of their management of that fund, can make it liable in payment. It is obvious that it would be a direct violation, in all cases, of the purposes of a trust, if this could be done; for there is not any person who ever created a trust fund that provided for payment out of it of damages to be recovered from those who had the management of the fund. No such provision has been made here. There is a trust, and there are persons intended to manage it for the benefit of those who are to be the objects of the charity. To give damages out of a trust fund would not be to apply it to those objects whom the author of the fund had in view, but would be to divert it to a completely different purpose." Page 513.

The pursuer was seeking the benefit of the trust fund as one who had been entitled thereto under the deed of trust (though no longer

entitled when the case was finally decided), and had been deprived of his rights by the trustees. In such case it may be that the doctrine of the inviolability of the trust fund is applicable, and that one who sues because of a diversion of trust funds cannot himself enforce a diversion. It must be admitted that the language of the opinions delivered by the law lords is not convincing, and that much reliance was placed upon those dicta in Duncan v. Findlater which were denied in Mersey Docks & Harbour Board Trustees v. Gibbs. If the case is rested upon a doctrine that under no circumstances can a trust fund be held liable for torts committed in its management, it stands alone in Great Britain.

In Hearns v. Waterbury Hospital, 66 Conn. 98, 33 Atl. 595, 31 L. R. A. 224, a case like that at bar, the defendant was held not liable. There was much discussion of the English cases. In dealing with Mersey Docks & Harbour Board Trustees v. Gibbs and similar cases, we think the court did not distinguish clearly between public bodies and private corporations established for public charitable purposes. The exemption from liability declared in the Connecticut case was based upon the theory that "a charitable corporation like the defendant, whatever may be the principle that controls its liability for corporate neglect in the performance of a corporate duty, is not liable, on grounds of public policy, for injuries caused by personal wrongful neglect in the performance of his duties by a servant whom it has selected with due care, but in such case the servant is alone responsible for his own wrong." Page 126, 66 Conn., page 604, 33 Atl., and page 233, 31 L. R. A. With the principle laid down thus broadly we need not agree in order to decide this case. If a servant of the defendant engaged in the care of Beck Hall, for example, injures a tenant by his negligence, and the act of negligence would render liable an ordinary landlord, it may well be that this defendant would be liable, as suggested by the learned judge before whom the trial was had below.

In McDonald v. Massachusetts General Hospital it was also said:

"It might well be questioned whether any contract could be inferred between the plaintiff and defendant. It has offered to him freely those ministrations which, as the dispenser of a public charity, it has been able to provide for his comfort, and he has accepted them."

The plaintiff's action is an action of tort, and no contract as such need be proved. If a person "once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it so as not to cause any injury to third persons which may be the actual consequences of his acts; and he cannot, by abandoning its execution midway and leaving things in a dangerous condition, exempt himself from liability to any person who suffers injury by reason of his having left them without proper safeguards." Osborne v. Morgan, 130 Mass. 102, 103, 39 Am. Rep. 437.

We assume that there was evidence competent to establish a tort on the part of the nurse for which the plaintiff could recover against the nurse. We assume that there was evidence that the nurse was the servant of the defendant, and that her tort was committed in

the course of the defendant's service. If this be true, it is hard to see that the plaintiff need allege or prove any contract in order to recover against the defendant. The first and third counts of the declaration allege a contract, it is true, and we are inclined to agree with the supreme court of Massachusetts that the contract there alleged is not proved; but the second count has no such allegations, and we do not wish to dispose of this case upon the ground that the plaintiff has erred in pleading by making an allegation which she has failed to prove, but which she might have omitted altogether. Doubtless there are many torts in which a contract or undertaking by the defendant is a necessary element. "For mere omission a man is not, generally speaking, held answerable. Not that the consequences or the moral gravity of an omission are necessarily less. One who refrains from stirring to help another may be, according to the circumstances, a man of common, though no more than common, good will and courage, a fool, a churl, a coward, or little better than a murderer. But, unless he is under some specific duty of action, his omission will not in any case be either an offense or a civil wrong. The law does not and cannot undertake to make men render active service to their neighbors at all times when a good or a brave man would do so. Some already existing relation of duty must be established, which relation will be found in most cases, though not in all, to depend on a foregoing voluntary act of the party held liable. He was not in the first instance bound to do anything at all, but by some independent motion of his own he has given hostages, so to speak, to the law." Pol. Torts (4th Ed.) p. 389. But here the defendant has moved; it has established a hospital, and has employed servants. If a person "once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the actual consequences of his acts." Osborne v. Morgan, 130 Mass. 102, 103, 39 Am. Rep. 437.

As Sir Frederick Pollock has said in the sentence immediately following the quotation given above, "Thus I am not compelled to be a parent; but, if I am one, I must maintain my children. I am not compelled to employ servants; but, if I do, I must answer for their conduct in the course of their employment." The absence of a contract made with the defendant does not exempt it from liability. If, indeed, there can be shown an agreement by the plaintiff to hold the defendant harmless for the acts of its servants, then it follows that this action cannot be maintained, and we agree with the learned judge of the court below that this agreement arises by necessary implication from the relation of the parties. That a man is sometimes deemed to assume a risk of negligence, so that he cannot sue for damages caused by the negligence, is familiar law. Such is the case of common employment, and such are the cases of athletic sports and the like, put by Pollock on page 150 et seq. Such is the case at bar. One who accepts the benefit either of a public or of a private charity enters into a relation which exempts his benefactor from liability for the negligence of his servants in ad-

ministering the charity; at any rate, if the benefactor has used due care in selecting those servants. To paraphrase the illustration put by the learned judge before whom this case was tried, it would be intolerable that a good Samaritan, who takes to his home a wounded stranger for surgical care, should be held personally liable for the negligence of his servant in caring for that stranger. Were the heart and means of that Samaritan so large that he was able, not only to provide for one wounded man, but to establish a hos-. pital for the care of a thousand, it would be no less intolerable that he should be held personally liable for the negligence of his servant in caring for any one of those thousand wounded men. We cannot perceive that the position of the defendant differs from the case supposed. The persons whose money has established this hospital are good Samaritans, perhaps giving less of personal devotion than did he, but, by combining their liberality, thus enabled to deal with suffering on a larger scale. If, in their dealings with their property appropriated to charity, they create a nuisance by themselves or by their servants, if they dig pitfalls in their grounds and the like, there are strong reasons for holding them liable to outsiders, like any other individual or corporation. The purity of their aims may not justify their torts; but, if a suffering man avails himself of their charity, he takes the risks of malpractice, if their charitable agents have been carefully selected.

We have thus indicated the grounds upon which rests, in our opinion, the defendant's exemption from liability in this case. Though we feel constrained to differ from the reasoning followed by some other courts in reaching the same conclusion, we are not unmindful that the identity of conclusion reached, though by different roads, is a strong proof of its correctness. Doubtless a weight of authority is more overwhelming if it is identical in reasoning as well as in result, but identity of result is in itself no mean argument for its justice.

We come now to the few cases opposed to the weight of authority just referred to. The most important of these is Glavin v. Rhode Island Hospital, 12 R. I. 411, 34 Am. Rep. 675. There the declaration alleged that, in consideration of the plaintiff's promise to pay reasonable compensation, the defendant promised to supply him with such surgical and medical attention as were necessary for the care and cure of his injuries, but that the defendant's servants neglected properly to care for the plaintiff, or to supply proper surgical treatment to him, and "conducted" so carelessly and improperly and unskillfully that his arm had to be amputated. The declaration further alleged that the defendant, regardless of the obligation incumbent upon it, neglected to provide competent officers and servants to treat the plaintiff. Upon the evidence, the plaintiff's case was that he had been injured by the malpractice of an interne before the arrival of an experienced surgeon, who should have been summoned at once. There seems to have been some evidence that the interne was carelessly selected by the defendant, though this evidence is not stated in the report. The defendant was a public charitable institution, like the defendant in this case. The court held

that the plaintiff could recover. Chief Justice Durfee, who delivered what appears to have been the opinion of the court, first discussed Holliday v. Vestry of Parish of St. Leonards, 11 C. B. (N. S.) 192, and showed that it had been overruled, and so afforded no support to McDonald v. Massachusetts General Hospital, which last case had been followed by the trial judge in Glavin v. Rhode Island Hospital. He next stated that a surgeon is not ordinarily the servant of a hospital, though the hospital may be liable for the torts of a surgeon carelessly appointed by it. So far as the interne acted as a surgeon, the learned chief justice said that he also was not the defendant's servant, but that, in summoning or neglecting to summon a surgeon to treat the plaintiff, he did act as the defendant's servant. The defendant was liable for his malpractice if he was improperly appointed, and, in any case, for his neglect to summon a competent surgeon. The learned judge then pointed out that the defendant was not a public or municipal corporation, and denied the doctrine of the inviolability of trust funds, which we have already dealt with. With much of the reasoning of the court we agree, and we do not find it necessary to dissent from the result so far as concerns the liability of a corporation like this defendant for the consequences of its negligent selection of agents and servants. Our difference of conclusion regarding its liability for the torts of its properly chosen servants in the treatment of patients has already been shown to rest upon reasoning which was not brought to the attention of the supreme court of Rhode Island.

Although the decision in Glavin v. Rhode Island Hospital is to-day the law in Rhode Island, so far as the matter is unaffected by statute, yet it is to be noticed that the legislature promptly changed the law in reference to all institutions like the defendant. We do not deem this fact to have an important bearing upon the case at bar, though it indicates that the sense of the community is shocked by holding a public charitable hospital liable for a servant's negligence in caring for a patient.

In Ward v. St. Vincent's Hospital, 39 App. Div. 624, 57 N. Y. Supp. 784, the action was for breach of an express contract by the defendant to furnish the plaintiff with a skillful, competent, and trained nurse. If this contract was proved, of course the defendant was liable for the damage resulting from its breach, and that case has no bearing upon this. In Donaldson v. Commissioners, 30 New. Br. 279, the declaration alleged damage caused by malpractice in letting the disease of a patient's eye progress to the destruction of the eye. The defendant demurred, and the majority of the court overruled the demurrer. One judge, in his opinion, relied upon an express contract which, so far as can be learned from the report, was not alleged in the declaration. The physicians were considered the servants of the defendant. The ground of the decision appears to have been that the defendant could escape its liability only by maintaining successfully the principle supposed to be laid down by the dicta in Duncan v. Findlater. As those dicta had been denied by the highest authority, the plaintiff prevailed.

For the reasons above given, and in spite of the cases of Glavin v.

Rhode Island Hospital and Donaldson v. Commissioners, we are of opinion that the defendant here was not liable to the plaintiff, and that the instructions given at the trial were correct. We are not called upon to decide if the defendant would have been liable upon allegation and proof that the nurse was incompetent, and that this incompetence was, or ought to have been, known to the defendant. As our conclusion agrees with that reached by the supreme court of Massachusetts, we need not consider how far we are bound by its decisions. The judgment of the circuit court is affirmed, with costs