In the Matter of the Estate of RICHARD LATHERS, Deceased.

Surrogate's Court, Westchester County, June 12, 1930.

*Henry B. Hammond* [*Harold R. Medina, Thomas H. O'Gorman* and *Rufus C. Van Aken,* of counsel], for the surviving trustee.

*Sackett, Chapman, Brown & Cross* [*Joseph A. Nickerson* of counsel, *E. Douglas Hamilton* on the brief], for executors of the last will and testament of Matthew Verner Simpson, deceased.

*Theodore L. Frothingham,* for executors of Anne R. Lathers, deceased.

*Edmund L. Mooney* [*Thomas F. Morris* of counsel], for Julia and Ida Lathers.

SLATER, S.   Richard Lathers died September 17, 1903, leaving a will admitted to probate November 14, 1903.   After numerous gifts the testator gave the residue of his estate to his executors and the survivor thereof in trust.   He created a trust for the life of his

wife and on the death of the wife divided the estate into six equal parts or shares, one part or share to be held in trust for each of his six children, viz., Ida Lathers, Julia Lathers, Emma L. Simpson, Abby Caroline Lathers, Agnes Lathers and Richard Lathers, Jr., during the terms of their natural lives, and, upon the death of each of said children, to pay the one-sixth part to the persons whom said child so dying shall designate and appoint by last will and testament, and, in default of such appointment, to his or her heirs. The executors and trustees were Abby P. Lathers, the widow, Richard Lathers, Jr., and Richard O'Gorman.

In the 14th clause of the will the testator said: " I request my son (Richard Lathers, Jr.) to continue to take charge of the country and city real property which may form part of my estate," and directed the executors to pay him during his life an annual sum of $3,000 in monthly payments in recognition of the services he had rendered the father as agent in taking charge of the real property. The widow died February 2, 1904.

The daughter Abby Caroline Lathers died January 17, 1905, leaving a will probated in the county of Westchester, February 18, 1905, wherein she appointed her interest in her father's estate to Richard Lathers, Jr., Agnes Lathers, Emma Lathers Simpson, Ida Lathers and Julia Lathers.

The daughter Emma L. Simpson died December 23, 1914, leaving a will probated in Philadelphia, Pa., in which she exercised in favor of her husband, Matthew V. Simpson, the power of appointment granted in her father's will. Matthew V. Simpson, the appointee, died September 20, 1923, and his executors appear herein.

The daughter Agnes Lathers died December 25, 1918, leaving a will probated in the county of Westchester, wherein she appointed her interest to Julia Lathers, Ida Lathers and Richard Lathers, Jr.

The son, Richard Lathers, Jr., died December 28, 1925, leaving a will probated in Westchester county, wherein he appointed his wife, Anne R. Lathers, to take the interest in his father's estate. The wife, Anne R. Lathers, died March 30, 1928, leaving a will probated in Westchester county. The appointed residuary legatee of her will appears herein.

Abby Caroline Lathers died before any of the residuary trusts were set up and before any accountings had been rendered, the estate being still at the time of her death in the course of administration. The five trusts for the remaining five children were set up July 2, 1906, at which time a distribution was made to each thereof by the executors under decree of this court dated June 30, 1906.

The testator, as part of his estate, left the property known as 322–328 West Fifty-seventh street, New York city, which premises furnish the source of the controversy in this proceeding. These premises were sold by the executors on May 10, 1907, and they took back a purchase-money mortgage in the sum of $210,000. This mortgage was transferred to the trustees under a decree of this court dated June 29, 1907. It was foreclosed in 1917 and bought in by the trustees. The property was sold on May 24, 1923.

The property in question was an apartment house occupied by a number of families. The trustees managed the real property through an agent, one Campbell. While this property was still part of the several trusts, a fire occurred on March 26, 1923, and destroyed part of the buildings and two persons sustained burns and injuries. Actions for damages were commenced against the trustees by the injured persons. The complaints were dismissed at the trial on the ground that the law does not permit actions for personal injuries against trustees as such. Thereupon actions were instituted against Richard Lathers, Jr., and Mr. O'Gorman as individuals. The actions came on for trial and the complaints were dismissed. Upon an appeal to the Appellate Division, new trials were granted. (*Sitzler* v. *Lathers*, 223 App. Div. 675; *Miller* v. *Lathers*, 224 id. 662.) On December 28, 1925, Richard Lathers, Jr., died and, therefore, as to him these personal injury actions abated. In June, 1928, the cases again came on for trial against Richard O'Gorman individually, resulting in verdicts upon which judgments were entered on June 25, 1929, against Mr. O'Gorman individually, for the sum of $12,000, plus costs, and for the further sum of $60,000, plus costs. Appeals were taken to the Appellate Division (226 App. Div. 751, 753) and to the Court of Appeals (252 N. Y. 551). The judgments were affirmed on the ground that, by reason of the use to which the premises were put, the passage to the fire escape was not free and unobstructed. The trustees were insured against claim for personal injuries in the amount of $10,000. Mr. O'Gorman, from his own funds, paid on December 14, 1929, the balance of said judgments, namely, $68,384.

Richard O'Gorman now resorts to equity and is asking the court to reimburse him from the trust funds. Objection is made.

The question of whether a trustee may obtain reimbursement from a trust estate because of a judgment procured against him by a third party for his negligence in the management of real property is difficult to solve. The question has arisen but infrequently. Judicial recognition of a right to indemnity for tort cases similar to the one in the instant case is of recent origin. (43 Harv. Law Rev.

1122, May, 1930.) The learned attorneys appearing say that this precise question has never before been presented to the courts of this State, and has been presented only twice in the English courts.

It has been held in this State that a third party injured through the negligent management of the trust property must sue the trustees individually. (*Keating* v. *Stevenson*, 1897, 21 App. Div. 604; *Norling* v. *Allee*, 1890, 10 N. Y. Supp. 97; *Donohue* v. *Kendall*, 1885, 50 N. Y. Super. Ct. 386; affd., 98 N. Y. 635.)

The issue in the so-called " fire case " was whether the trustees were liable because of the tenants' use of the leased premises in constituting an obstruction of the customary fire escapes or exits.

And here the question is whether the law indemnifies or reimburses trustees for tort judgments rendered against them personally. There is considerable difference between the question involved in an action at law between the trustee and some person injured by the tort and an action or proceeding in equity wherein the matter under consideration is the reimbursement of the trustee. (*O'Malley* v. *Gerth*, 67 N. J. Law, 610; *Leigh* v. *Lockwood*, 15 N. C. 577.)

In the tort action, so far as the injured person is concerned, the trustees are liable as individuals, without regard to any right of indemnity or reimbursement out of the trust funds. (*Keating* v. *Stevenson*, 21 App. Div. 604, 608; *Gillick* v. *Jackson*, 40 Misc. 627.)

The two leading cases upon the instant question of reimbursement are *Benett* v. *Wyndham* (1862, 4 De G., F. & J. 259) and *Matter of Raybould* (1900, 69 L. J. Ch. 248), decided by the English courts. The question seems not to have been considered before the *Benett* case. These cases are cited and relied on in the American courts. In *Benett* v. *Wyndham* (*supra*) both trustees were sued, judgment was recovered, the trustees paid the judgment and then sought reimbursement out of the estate. The remaindermen contended that there was no authority for allowance of a claim of this nature. The court said: " The trustee in this case appears to have meant well, to have acted with due diligence, and to have employed a proper agent to do an act the directing which to be done was within the due discharge of his duty. The agent made a mistake, the consequences of which subject the trustee to legal liability to a third party. I am of the opinion that this liability ought, as between the trustee and the estate, to be borne by the estate."

The *Raybould* case was an application for payment out of the estate which raised the question of the liability of a testator's estate for the tort of a trustee. The court, in deciding, said: " It has been argued that there is no authority to justify me in holding that, where damages have been recovered against a trustee in respect of a tort, the person so recovering can avail himself of the trustee's

right to indemnity, and so go direct against the trust estate; but the authority of *Benett* v. *Wyndham* (4 De G., F. & J. 259) goes to show that if a trustee in the course of the ordinary management of his testator's estate either by himself or his agent, does some act whereby some third person is injured, and that third person recovers damages against the trustee in an action for tort, the trustee, if he has acted with due diligence and reasonably, is entitled to be indemnified out of his testator's estate. When once a trustee is entitled to be thus indemnified out of his trust estate, I cannot myself see why the person who has recovered judgment against the trustee should not have the benefit of this right to indemnity and go direct against the trust estate or the assets, as the case may be, just as an ordinary creditor of a business carried on by a trustee or executor has been allowed to do, instead of having to go through the double process of suing the trustee, recovering the damages from him and leaving the trustee to recoup himself out of the trust estate. I have the parties interested in defending the trust estate before me, and I have also the trustee, and he claims indemnity, and, assuming that a proper case for indemnifying him is made out by the evidence, I think his claim should be allowed."

This is the accepted English rule. (Laws of England, by Earl Hanbury, 1885–1905, vol. 28, p. 157.)

The rule laid down in the English cases has been recognized in our State in *Kellogg* v. *Church Charity Foundation* (128 App. Div. [2d Dept] 214, 217). The trial question in that case involved the liability of a charitable institution for the negligence of its servants. The case appears again in 135 App. Div. 839, and 203 N. Y. 191. Justice GAYNOR, writing for the court, said: "It is true that an action does not lie against a trustee under a will, or the like, as such, for his torts or those of his servants in the affairs or administration of the trust. He has to be sued individually; but the reason is purely technical and the courts allow the judgment against him individually for damages to be paid out of the trust funds, if he was free from willful misconduct in the tort. No rule, therefore, that trust funds may not be used to pay damages for torts in the administration of the trust exists even in the case of ordinary express trusts, let alone in the general trusts of charitable corporations (*Powers* v. *Mass. Homeopathic Hospital*, 109 Fed. 294; *Bruce* v. *Cent. Meth. Ep. Ch.*, 147 Mich. 230; *Hewitt* v. *Association*, 73 N. H. 556)."

The learned attorney for the Simpson trust claims Justice GAYNOR's words to be dicta. It is true that the pronouncement is *dicta*.

The rule laid down in the English courts was followed in *Powers*

v. *Mass. Homeopathic Hospital* (C. C. A., 109 Fed. 294, 300).
Judge LOWELL, writing, says: " The suit is brought against the
trustee as an individual. The judgment and execution run against
him individually. When these are satisfied, however, the trustee
is reimbursed from the trust estate, unless individually at fault."

Chief Judge CULLEN in *Hordern* v. *Salvation Army* (199 N. Y.
233, 238), quoted Judge LOWELL's remarks in *Powers* v. *Mass.
Homeopathic Hospital (supra)*. The quotation may be dicta on
Judge CULLEN's part, but he says: " We can add nothing to the
force of this reasoning, but simply express our concurrence therein,
as well as in the argument of Judge LOWELL."

In Bogart on Trusts (p. 299) the author says: " The trustee
has also been allowed the right of indemnity for liability sustained
through the commission of a tort, if he acted with reasonable pru-
ence and diligence."

Mr. Justice HARLAN F. STONE, then Dean Stone, in discussing
the theory of proceeding directly against a trust estate for tort,
said: " The trustee, having incurred liability in his administration
of the trust estate without any breach of his trust duties, should be
entitled to indemnity." If the tort were committed by the trustee's
own negligent act, it is clear that the trustee could not be said to
be entitled to indemnity. If the trustee be insolvent, the loss
may fall upon the trust estate. (22 Col. Law Rev. 527, 1922.)

The English cases and Justice GAYNOR's dicta were followed in
*Ewing* v. *Foley* (115 Tex. 222, 1926), and in the following cases in
other American jurisdictions: *Monblatt* v. *Young* (199 Ill. App.
312); *Wahl* v. *Schmidt* (307 Ill. 331, 339, 1923); *Bruce* v. *Central
M. E. Church* (147 Mich. 230, 240, 254); *Parmenter* v. *Barstow*
(22 R. I. 245, 247; 44 A. L. R. at 676); *Willitts* v. *Schuyler* (3 Ind.
App. 118); *Morgan's Estate* (2 Penn. Dist. Rep. 816); *Matter of
Hunter* (151 Fed. 904); *Miller* v. *Smythe* (92 Ga. 154). The text
book writers also have adopted the principle: Bogart Trusts, 299;
Perry Trusts [7th ed. 1929], p. 725; 3 Pom. Eq. Juris, § 1070. The
following law reviews restate it: 28 Harv. Law Rev. 727; 43 id.
1122 *et seq.* May, 1930; 5 Tex. Law Rev. 368, 1927; 22 Col. Law
Rev. 527, 1922.

Judge LOWELL, in *Powers* v. *Mass. Homeopathic Hospital (supra)*,
referring to the question, said: " Indeed, the law on this point is so
plain that no case can be found in the Massachusetts Reports
expressly sanctioning the payment from a private trust fund of
damages for a tort committed in the administration of the trust
property, though the practice must be of weekly occurrence in this
city of Boston."

There is a dearth of reported decisions in this State upholding

the right of trustees to reimbursement and indemnity following tort judgments.

Some element of *personal* fault is recognized as the only basis for charging a trustee with the negligence of an agent employed in the administration of a trust estate. The personal and fiduciary nature of a trust relationship prevents a trustee from delegating to another the management and control of the trust estate or duties requiring the exercise of his own personal discretion. But where the duties are of a purely ministerial nature, or of a type he could not reasonably be expected to perform personally, a trustee has the right to employ such assistance as may be necessary for the proper execution of the trust. (Perry Trusts [7th ed. 1929], §§ 912, 913.) But the trustee is personally liable to the third parties for injuries caused by the negligence of a servant employed in the administration of the trust, and his liability is predicated upon the ordinary principles of agency. There are cases where the trustee is not entitled to reimbursement out of the trust funds, owing to his own personal neglect, or when he acts wrongfully.

It is my opinion that the test is this: where the trustee is without *personal fault,* he is entitled to reimbursement, and it is only equitable that the trust estate should bear the loss. (*Ewing* v. *Foley,* 115 Tex. 222, 228.)

It may be argued that the distinction between law and equity has been abolished (Civ. Prac. Act, § 8) and there exists no reason for denying the relief of the third party against the trustee in his representative capacity. The answer is that the claimants endeavored to sue the trustees as such, but were limited to their suit against them individually by the courts of this State.

The cases cited by counsel against the proposition of reimbursement all weave around the thought that the corpus must not pay for the " careless act " of the trustee, or through the " negligence " of the trustee, or the trustee's " own neglect " or " willful wrong " or his " own negligent act." But if the trustee acted without personal fault, the law of our State should permit him to be indemnified out of the trust funds or estate which he represents. Equity as a court of conscience will refuse to apply the strict common-law doctrine.

Premises for this legal reasoning are found in equitable principles, indicating fairness and justice because a trustee, as in the instant case, is entirely free from personal fault. He has gained nothing; neither has the estate suffered from his personal negligence. This appears to be a sound legal principle and logic leads the rest of the way and develops the grounds of decision. Dean Pound in a recent address said: " Everywhere in the law we are referred to a standard

of what is reasonable. Things must be done in a reasonable time; certain transactions of persons in certain relations must be reasonable. Regulations by those who have the power to make them must be reasonable. Customs, in order to be valid, must be reasonable. * * . * Legislation of a state must be reasonable." And, let me add, in these modern times the courts are coming to be more reasonable. To my mind,. reimbursement to the trustee upon the facts of the instant case is the reasonable thing. It is the law of reason as applied to human society as we find it in evidence to-day. It reduces what is reason as the law of the case to public policy. The courts are shaping their conclusions in accordance with reason and justice. It has fallen to this court, in the first instance, to shape and develop the law of this State with regard to this complex question.

Justice GAYNOR's remarks in the *Kellogg* case may be dicta, but they announce a statement of principles which the court approves and makes the law of this case.

The question of sufficient liability insurance to cover the fire situation has arisen here. What the general custom was, if any, as to the reasonable amount of liability protection taken out in 1922 is one thing, and what is reasonable to-day is quite another thing. Modern appliances of the machine age have progressed so fast in this country that the idea of protection afforded by all kinds of insurance has made rapid strides. The man with the modern income nowadays is educated to secure greater liability protection. In my opinion, the $10,000 liability protection in 1922, and before, was generally considered ample. I find no cause for censure of the trustee on this point.

It is my opinion that Richard O'Gorman was not personally or willfully negligent in his care of said real property; that he did all that a reasonably prudent man would do in his own affairs.

Trustees are not insurers, nor guarantors, in the care of assets of the trust estate. They are immune if they act in good faith and exercise that degree of care and prudence which the law requires of them. They are required, however, to use that degree of prudence and vigilance which would in general be exercised by a reasonably prudent man in the conduct of his own affairs of like nature. (See *Matter of Clark*, 136 Misc. 881, and cases cited.)

The trustees employed a competent and qualified agent to be in active charge of the buildings. I find no evidence that the agent had been carelessly selected, or that he was incompetent./ "As long as reasonable care has been exercised, in both the choice and supervision of an agent selected for the performance of a properly delegable duty, the trustee is not answerable for any loss occasioned

by the negligence or dishonesty of the former. Thus a trustee is not liable for losses arising through the insolvency of an agent or attorney employed to collect debts, or of a banker with whom trust funds have been deposited, or through the theft or embezzlement of the funds by a collection agent, broker, attorney, depositary, or clerk employed in carrying on the trust business." (Harv. Law Rev. May, 1930, p. 1123.)

The testimony shows that there were frequent inspections of the premises by the public authorities and that at the time of the fire there were no orders or requirements and no violations on file against the premises.

In the instant case I hold that the trustee used good faith and exercised that degree of care and prudence which the law required of him in the control of the Fifty-seventh street real property.

The character of the interest of each trust at the time of the fire was *personalty* (*Matter of Bloodgood*, 223 App. Div. 640), and until accounted for and turned over, title remains in the trustee. The trust estate may be ended, trustees may be compelled to distribute, but until they do distribute, ownership and title to the fund remains in the trustees, subject to the control of the court.

At the time of the fire the Fifty-seventh street premises were owned by the trustees for the benefit of the five trusts in equal proportions, three being still in existence and two being terminated but undistributed. The mortgage for $210,000, taken May, 1907, was divided equally among the five trusts. The account of trustees, dated March 31, 1909, shows that this asset in the trustees' hands stood invested, one-fifth of the bond and mortgage for each trust. These accounts were settled by decree April 20, 1909.

Therefore, I find that each of the five original trusts is liable to the payment of its proportionate share of the sum of $68,384, with interest thereon from the date of the payment by Richard O'Gorman.

Emma L. Simpson, the life beneficiary of the Simpson trust, died December 23, 1914. It is charged that the trustees have been remiss in not distributing the fund of this trust share.

There was no actual setting apart or allotment of securities or lands for each of the several trusts. There was no separation or division of the estate as it existed at the death of Richard Lathers, Sr. All had identical interests in all the securities and in the real estate. Probably the convenience of administration dictated the keeping of the estate *in solido*.

While the Simpson trust terminated on the death of Emma L. Simpson in 1914, the property of the trust continued to be kept *in solido*. While the law places a duty upon trustees to make reasonably prompt distribution, the ultimate beneficiary, in this

case the appointee of the will of Emma L. Simpson, also had a duty cast upon him, as well as the right to compel an accounting and distribution. He did not avail himself of this right. The appointee, Matthew V. Simpson, under date of November 18, 1915, by letter to the trustees, made no demand for an accounting and distribution, but accepted payment on account of his *fifth interest*, and agreed to " become responsible for one-fifth of the loss that may arise in the conduct and management of the said security," provided he participated to the same extent, one-fifth, in any and all profits. Under date of March 29, 1923, a few days after the fire and maybe without knowledge of the fire, he wrote from California to the trustees approving their course in not selling the Spring street, the Fifty-seventh street and 71 Suffolk street real estate and, likewise, approved of the employment of an agent to manage such parcels of real estate. This objection is without merit.

It is also the contention of those who control the Simpson trust share that, if the claim of reimbursement should be allowed, it should be paid entirely out of the Richard Lathers, Jr., trust, so that the Simpson trust should not participate in the reimbursement of the tort damage. The reason advanced for this is not clearly understandable. It may be argued that Richard Lathers, Jr., had control of the real estate as conferred by the terms of the will. The words of the will in this regard were precatory and cannot be held to be directory or mandatory. No added liability was cast upon Richard Lathers, Jr., by the will. It is my opinion that the liability did not rest wholly upon Richard Lathers, Jr. The will appointed, and two trustees are found acting. Mr. O'Gorman was not relieved, by the words of the will which attempted to confer control on his cotrustee, from his liability as trustee. When Richard Lathers, Jr., died, Mr. O'Gorman was surviving trustee. Again, it may be argued that this particular trust should be charged wholly with the loss because Richard Lathers, Jr., was personally negligent. There was no proof offered in support of such claim. The request for full reimbursement from the Richard Lathers, Jr., trust fund is denied.

The Simpson trust also contends that, if reimbursement is allowed, the trustee should be paid no greater sum from the Simpson trust than twelve per cent of his losses, claiming that the interest of this trust in the Fifty-seventh street property was only twelve per cent of the entire investment; that its interest had been reduced from twenty per cent to twelve per cent by payment of $12,500 on November 22, 1915, being part of the principal of the mortgage before its foreclosure. The mortgage held by the trustees upon the fire property so called was never reduced in amount by any pay-

ments on account thereof. (See Schedule E, account Simpson Trust, dated Nov. 1, 1923.) It was received for $210,000 and foreclosed for like amount. Nothing had been paid on account of the principal. It appears, however, that other investments were liquidated, and the trustees paid the entire cash received to Matthew V. Simpson in November, 1915. Such payment increased the interest of the other trusts in the entire fund. The interest in the Fifty-seventh street plot was kept at one to one-fifth for profits and losses. (See letter of M. V. Simpson, dated Nov. 18, 1915.) Upon the sale of the Fifty-seventh street land in 1923, a net profit of $38,322.87 was realized, and twenty per cent thereof, or $7,666.57, was paid to the Simpson beneficiary. (See Schedules B and G, Simpson trust account, Nov. 1, 1923.) This fails to substantiate the claim to only one-twelfth per cent interest.

After these payments to the Simpson trust, the charge of expenses against *income* was properly reduced to twelve per cent to accord with the reduced amount due from the entire fund held *in solido*.

This contention is entirely without merit.

I hold that the sum heretofore paid to the beneficiary of the Simpson trust was in reduction of the principal of the entire corpus of his share of the estate held *in solido*. The payment is to be treated as one on account of Emma L. Simpson's original interest in the whole trust estate.

Richard O'Gorman, the surviving trustee, in open court, through his attorney, read into the record a request to be permitted to resign as such trustee. The court permits said Richard O'Gorman, the surviving trustee, to resign and the decree upon the several accounts in these proceedings may so indicate.

Submit decision and decree in accordance with this opinion, upon notice to all attorneys.