In the Matter of the Judicial Settlement of the Account of FRANCIS D. BUCK, as Executor, etc., of FANNY T. HURLBUT, Deceased.

CLARA M. BUCK, as Executrix, etc., of FRANCIS D. BUCK, Deceased, Appellant; ANNA TEN BROECK BUCK and Another, Respondents.

Second Department, October 29, 1924.

**Executors and administrators — judicial accounting — investments — will authorized investment in securities outside those recognized by law as proper — executor's account will be surcharged with such investments if he does not act in good faith or does not use reasonable care and diligence — executor in November, 1919, made investment in bonds of steamship corporation organized in July, 1919 — corporation failed in 1920 — executor not guilty of lack of good faith — advice of financial institution which underwrote bonds does not excuse executor — executor is bound to act as normal or prudent man would have acted — investment was in new, untried and speculative securities — executor did not use due diligence and his account should be surcharged with amount of investment with interest.**

An executor under a will authorizing him to make investments in securities not recognized by law as proper, is chargeable with any loss resulting from the making of such investments only where he has not acted in good faith and used the care and diligence which would be exercised by a normal or reasonably careful and prudent person in transactions relating to his own money.

The account of such an executor should be surcharged with the amount of money invested in November, 1919, in the bonds of a steamship corporation which was organized in July, 1919, together with the interest thereon, though he is not chargeable with lack of good faith, since the securities represented a new, untried and speculative investment which a reasonably prudent man, in the exercise of due diligence, would not have made.

The fact that the executor relied upon the advice of a financial institution as to the quality of the investment does not establish that he exercised reasonable care and prudence, since it appears that the financial institution whose advice he sought underwrote the bonds in question.

APPEAL by Clara M. Buck, as executrix, from certain portions of a decree of the Surrogate's Court of the county of Rockland, entered in the office of said surrogate on the 17th day of December, 1923.

This proceeding was instituted upon the petition of Clara M. Buck, as executrix of the last will and testament of Francis D. Buck, deceased, who was the executor of the last will and testament of Fanny T. Hurlbut, deceased, praying that the account rendered by her on behalf of said Francis D. Buck, now deceased, as executor of and trustee under the last will and testament of Fanny T. Hurlbut, deceased, be judicially settled.

*Alfred G. Reeves [Gurdon S. Buck, Alexander S. Rowland* and *Wallace B. Lydeker* with him on the brief], for the appellant.

*Leon M. Woodworth,* special guardian for the respondents Anna Ten Broeck Buck and another.

Decree of the Surrogate's Court of Rockland county affirmed upon the opinion of the surrogate, with costs to the special guardian payable out of the estate.

KELLY, P. J., RICH, JAYCOX, MANNING and KELBY, JJ., concur.

The following is the opinion of the surrogate:

PATTERSON, S.:

The account of Francis D. Buck, as executor and trustee of the will of Fanny T. Hurlbut, deceased, as prepared by his executrix, Clara M. Buck, is before the court for judicial settlement.

There being infants to the proceeding, a special guardian was appointed to represent them. He has raised certain objections to the account, as filed. The others having been satisfactorily explained by the accounting party, there remains for disposition but one, namely, the item set forth in Schedule O-2, whereby the executor seeks to credit himself with eight Green Star Steamship Corporation bonds, par value of $1,000 each, purchased at 98.30, for $7,864, it being an investment made by the trustee for the account of the estate.

These bonds, at the time of the accounting, had no market value, and it is the contention of the special guardian that the executor should be surcharged with the price thereof, together with any loss of interest which has been suffered as a result of said investment, because the same was contrary to the provisions of the laws of this State applicable to investments by executors and trustees, and contrary to the terms and provisions of the will of the testatrix.

Of course, were it not for the provisions of the 7th clause of the testatrix's will, the merit of the special guardian's objection would be obvious, because the investment is not one restricted to executors and trustees by the laws of this State. However, by reason of the provisions of the said clause, the argument is advanced by the accounting party that he cannot be called to answer for the concededly unfortunate investment, because the will provides as follows: " I authorize and empower the said executor and trustee to hold and continue any investments made by me in his discretion, and to sell, call in, change, invest and reinvest all securities or investments whenever he may deem it necessary or proper, and to make investments and reinvestments of moneys in securities

other than those recognized by law as he may deem it wise and proper."

I think it is conceded that where such a clause is found, clothing a trustee with discretion, he is answerable only when he has not acted in good faith and used the care and diligence in investments which would be exercised by a reasonably careful and prudent person. The question, therefore, becomes one essentially of fact, namely, did the executor act in good faith, and did he use that degree of care and diligence which we would expect from one circumstanced as was the executor, charged with the execution of a trust, in which the rights of infants were involved. We may dismiss the question of good faith. There is nothing in the evidence, either directly or inferentially, from which the executor could be charged with a lack of good faith, thus leaving the sole question, did he exercise reasonable care and prudence in the investment in question.

The numerous authorities cited, both by the accounting party and the objector, are not largely helpful. They all reiterate the general principle above stated and apply that principle to the instant case, each of which has its peculiar facts.

On November 11, 1919, the trustee had in his possession, which presumably came to him from his testatrix, certain securities, of undoubted stability and of a ready market value, namely, the bonds of various railroad corporations, being, for the most part, the character of investments authorized for trustees by the laws of this State. They were sold for a sum aggregating $11,688.77, and of such amount $7,907.56 was invested in the bonds of the Green Star Steamship Corporation, which is the investment in question. Was such an investment the act of a prudent man, not in the light of what has followed, but with the light the executor had at the time of the investment?

The Green Star Steamship Corporation was organized in July, 1919, and the bonds purchased the following November, and while it is true that there were a couple of established steamship companies taken into the Green Star organization, the fact remains that the bonds in question must fall in the category of a new, untried and unseasoned investment.

The particular bond issue in which the executor invested was one of $4,500,000, secured by a mortgage which was a specific lien upon five specific ships, and was issued on a basis of $100 per ton value of the said ships, which had, or is claimed to have had, at the time a market value of $225 to $230 a ton.

It is urged as a justification for the investment that at the time of the purchase the shipping industry was at its peak; that bottoms

were in great demand; that there was a scarcity of tonnage throughout the world following the war; ships were earning enormous profits; the freight on a ton of coal from the United States to Italy was twenty-six dollars and upon this basis, or anywhere near this basis, the bonds were a perfectly secure and safe investment. Notwithstanding these glowing prospects, in October, 1920, the company defaulted in its interest on the bonds, and shortly after was placed in the hands of a receiver.

The market price of the tonnage in question had dropped from two hundred and thirty dollars a ton to thirty dollars a ton and the cost of transporting a ton of coal from the United States to Italy had dropped from twenty-six dollars to three dollars and fifty cents a ton, leaving in its wake disaster for all investments of a similar nature.

The bonds were underwritten by the Equitable Trust Company at ninety-two and one-half and sold by the underwriter for ninety-eight.

It is urged, on behalf of the executor, that he was inexperienced and unlearned in the way of investments and relied upon the recommendation and advice of the Equitable Trust Company, an institution of splendid standing in the financial world. This would, perhaps, go far to absolve him from a lack of good faith in the premises, but it cannot excuse him from an improvident or imprudent investment, especially in view of the fact that the Equitable Trust Company was financially interested in the sale of the bonds. Its advice could not, by the very nature of things, be disinterested. It was, inevitably, tainted by self-interest.

The degree of care to which the executor was held was not his opinion of the security of the investment nor that of some interested party, but what a normal or prudent man would have thought of it as applied to his own personal transactions. Did reasonable prudence dictate an investment in a security of this nature? I think not.

The war had closed. It was a matter of common knowledge that as soon as things became normal there would be a great surplus in world shipping. America alone had overbuilt, by many hundreds, the number of bottoms normally employed in world trade.

It is conceded by the testimony on the part of the accounting party that the situation, at the time, as regards shipping was greatly inflated. A collapse was inevitable, and yet this concern did not have its inception until after the war and in eighteen months time after it was organized it was in the hands of a receiver.

Under all these circumstances, it can hardly be reconciled with

Second Department, October, 1924.                    [Vol. 210

prudence that an executor should sell seasoned bonds of railroad corporations and invest in an undertaking always, at best, speculative in this country, and at the time obviously perilous. The transaction does not measure up to the duty of a trustee, even where he is clothed, by his testatrix, with discretion as to the nature and character of his investments.

I think the test here applicable is stated succinctly in *Matter of Hall* (164 N. Y. 196, 199). There, while the facts are not analogous, the authority given by the will as to investments is the same. There the court said: " The range of so-called ' legal securities ' for the investment of trust funds is so narrow in this State that a testator may well be disposed to grant to his executors or trustees greater liberty in placing the funds of the estate. But such a discretion in the absence of words in the will giving greater authority should not be held to authorize investment of the fund in *new speculative or hazardous ventures.* If the trustees had invested in the stock of a railroad, manufacturing, banking, or even business corporation, which, by its successful conduct for a long period of time, had achieved a standing in commercial circles and acquired the confidence of investors, their conduct would have been justified, although the investment proved unfortunate."

Surely, the investment in question was in a new venture and, judging from all experience, speculative and hazardous. The company had acquired no standing in commercial circles, nor does it appear that it had acquired the confidence of investors generally. The venture was part and parcel of an era of inflation in the shipping world. There was nothing about it that bespoke stability or engendered confidence, and it was not such a venture, as an investment, as would appeal to a prudent man in the conduct of his own business affairs.

However much sympathy we may feel for the executor, that he should have been lured into making such an investment while acting in perfectly good faith, no such sentiment can ripen into prudence or fair business judgment. He elected to dispose of securities of soundness and established reputation and invest in the speculative and unknown, and it cannot be for these infants to lose by reason of his error of judgment, which lacked ordinary business acumen, however honestly intended.

It is my conclusion that the executor should be surcharged with the sum invested in the bonds of the Green Star Steamship Corporation, together with the interest thereon.