In the Matter of the Construction of the Will of JACOB ROBBINS, Deceased.

Surrogate's Court, Kings County, November 15, 1929.

*Sol Friedland,* for the petitioner.

*W. Harry Sefton,* special guardian for Naomi Robbins and others, infants.

WINGATE, S. The single question presented in this application is for a construction of directions in the will of Jacob Robbins that the sums bequeathed for the erection of certain trusts " shall be safely and conservatively invested by my said Executors and Trustees." At his death a considerable proportion of testator's property was invested in other than the class of securities specified in section 21 of the Personal Property Law (as amd. by Laws of 1928, chap. 362) and section 111 of the Decedent Estate Law (as amd. by Laws of 1928, chap. 362).

The policy of this State respecting trust investments, stated in *King* v. *Talbot* (40 N. Y. 76), enunciated in 1869, has stood unquestioned to this day. A few excerpts from the opinion of the court will clarify the question in the instant case.

The court says (at p. 85):

" * * * the just and true rule is, that the trustee is bound to employ such diligence and such prudence in the care and management, as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs.

" This necessarily excludes all speculation, all investments for an uncertain and doubtful rise in the market, and, of course, everything that does not take into view the nature and object of the trust, and the consequences of a mistake in the selection of the investment to be made.

" It, therefore, does not follow, that, because prudent men may, and often do, conduct their own affairs with the hope of growing rich, and therein take the hazard of adventures which they deem hopeful, trustees may do the same; the preservation of the fund,

and the procurement of a just income therefrom, are primary objects of the creation of the trust itself, and are to be primarily regarded."

Again (at p. 88):

" The moment the fund is invested in bank, or insurance, or railroad stock, it has left the control of the trustees; its safety and the hazard, or risk of loss, is no longer dependent upon their skill, care, or discretion, in its custody or management, and the terms of the investment do not contemplate that it ever will be returned to the trustees.

" If it be said, that, at any time, the trustees may sell the stock (which is but another name for their interest in the property and business of the corporation), and so repossess themselves of the original capital, I reply, *that* is necessarily contingent and uncertain; and so the fund has been voluntarily placed in a condition of uncertainty, dependent upon two contingencies: *First*, the practicability of making the business profitable; and, *second*, the judgment, skill, and fidelity of those, who have the management of it for that purpose."

As stated, this rule has been consistently followed from the date of its formulation to the present time. A few of its almost innumerable applications may be found in *Adair* v. *Brimmer* (74 N. Y. 539); *Deobold* v. *Offermann* (111 id. 531); *Matter of Wotton* (59 App. Div. 584); *Hine* v. *Hine* (118 id. 585); *Matter of Hall* (48 id. 488); *Putnam* v. *Lincoln Safe Dep. Co.* (87 id. 13); *English* v. *McIntyre* (29 id. 439); *Matter of Lyall* (212 id. 417).

This rule lays down the policy of the State as to what shall be considered a safe and conservative investment, and has been crystallized by codification in sections 21 of the Personal Property Law and 111 of the Decedent Estate Law.

Like other rules of testamentary construction, the present will yield to an unmistakable evidence of a contrary intention on the part of the testator, since as Vice-Chancellor SHADWELL once pertinently remarked: " Every testator, by the law of the land, is at liberty to adopt his own nonsense in disposing of his property." (See *Boulle* v. *Tompkins*, 5 Redf. 472, 478.)

The cases cited by counsel for the trustee merely represent examples of such instances where, under the peculiar phraseology used in the wills in question, the courts construed testator's language as having intended the application of a different rule in the administration of his estate. In none did the language employed remotely resemble that found in the will under consideration. They, therefore, present no authority in the least pertinent to the instant determination. The question in each case of this type, in the last

analysis, is similar to that of a testamentary authority to an executor to continue testator's business, which this court had recent occasion to consider. (*Matter of Gorra*, 135 Misc. 93.) Under ordinary circumstances a personal representative possesses no authority to continue a testator's business, but if the will gives unmistakable evidence of a contrary intent on the part of the decedent, his representative will be protected so long as he strictly pursues the letter of his authority. Likewise, here, under ordinary circumstances, a trustee has no authority to invest trust funds in any manner other than that specified by statute, but if the tenor of the will demonstrates that testator desired to vest in the trustee a broader discretion, he will be protected so far as he strictly pursues the authority bestowed and complies with the general rules of law applicable to his office. In the instant case, the will gives no discretion, for which reason the trustee is limited in his retention and acquisition of investments to those authorized by law.

Proceed accordingly.