In the Matter of the Estate of FREDERICK H. CLARK, Deceased.

Surrogate's Court, Westchester County, May 5, 1930.

*Harison & Hewitt* [*William Harison* and *Arthur Sutherland* of counsel], for the trustee.

*Budd & Coffey* [*Bern Budd* and *Kenneth C. Quencer* of counsel], for the objectors.

*William J. Wallin*, special guardian, objector.

SLATER, S. The objectors in this accounting proceeding seek to surcharge the trustee for the retention of securities. The testator's will was made June 23, 1916. He died April 9, 1920. The will was probated May 4, 1920, and letters testamentary issued on that date. The will directed the executors to divide the residuary estate in nine equal parts, and gave to the accounting party herein two-thirds of two of such equal ninths, to wit, four-twenty-sevenths of the residuary estate, in trust for the benefit of testator's daughter, Elizabeth C. McCormack, the net income to be paid to her until she should arrive at the age of thirty-five years, when one-half of the principal thereof is to be paid over to her. The income of the balance of said fund to be paid to her during her life; upon her death the principal goes to her children, if any.

Henry A. Clark, a brother, and Fannie D. Clark, the widow, qualified as executors.

The testator at the time of his death was possessed of 845 shares of Cuban American Sugar Company common stock of the par value of $100 each. This stock was appraised for transfer tax as of April 9, 1920, at $494 per share of $100 par value. Shortly thereafter said common stock was split up and divided into ten shares of $10 par value for every one share of $100 par value. The result was that the estate owned 8,450 shares of $10 common stock of this company, which, on the basis of the appraisal for transfer tax, was worth approximately $49 per share at the time of testator's death.

Testator also owned 600 shares of seven per cent cumulative preferred stock of said Cuban American Sugar Company of the par value of $100 each, which were appraised for transfer tax at $100 a share.

Testator at the time of his death also owned 400 shares of the common stock of the Guantanamo Sugar Company of the par value of $50 each, which were appraised for transfer tax as of that time at $86 a share. These shares were afterwards divided and split up into five shares of no par value for each original share of $50 par value, resulting in the estate owning 2,000 shares, which on the

basis of the transfer tax appraisal were of the value of $17 each as of the time of the testator's death in 1920.

In the proceedings for the settlement of the account of the executors said stocks were valued as follows:

8,450 Cuban American Sugar Company common at $22 for each $10 share;

600 Cuban American Sugar Company preferred stock at $89.25 for each $100 share;

2,000 Guantanamo Sugar Company common stock at $12.25 for each share of no par value.

The last-mentioned valuations were based upon appraisals made by appraisers appointed by this court for the purposes of the distribution of the estate pursuant to section 268 of the Surrogate's Court Act, and were made as of *March 29, 1922*. The court's decree on the said accounting of the executors was not made until almost a year after the said appraisal, *i. e.*, as before stated, on March 14, 1923, and at that time the stocks had appreciated in value over and above the appraisement of March, 1922. No objections, however, were filed to such account. But the court, on its own motion, brought all the parties before it for a hearing upon the loss as indicated by the account. It was claimed by the executors that, pursuant to the 12th paragraph of the will, they were authorized to continue all the investments of money in securities made by the decedent. The said 12th paragraph is as follows:

" *Twelfth.* I hereby authorize and empower my Executors and Trustees to continue all the investment of money in the securities made by me and which shall come into their possession and control at my decease, without any personal liability for so doing, and in making division of my estate among the legatees and devisees as provided in this my Will, I authorize my Executors and Trustees to divide the securities as far as practicable, giving to each legatee the same proportion of each security, and not to require any one legatee to take his or her share in whole from any kind or class of securities."

In the executors' accounting proceeding the court took proof of the facts and conditions surrounding the decline in the value of the sugar securities (a portion of the same securities is being accounted for herein), and decided that, in view of the lack of objections on the part of the family and for other obvious reasons, in retaining said securities for division among legatees, the executors exercised reasonable care, diligence and prudence, and were not grossly negligent in failing to sell such securities, nor personally liable for the shrinkage or decline in the value of said securities.

The Fulton Trust Company of New York, the trustee named in

the will, took over the securities for the several trusts. Here a division was had and a fresh start made. The accounting party herein was represented before me at the time of the executors' account of proceedings. It had full knowledge of the prior history of the estate when it took over and assumed its trusteeship. The decree permitting the trustees to take over the securities for the trust now being accounted for was presented by the same attorneys who now appear for the trustees. The stocks were taken over as follows:

1,248 shares common stock Cuban American Sugar Company, at $22 per share, $27,456.

88 shares preferred stock Cuban American Sugar Company, at $89.25 per share, $7,854.

296 shares common stock of Guantanamo Sugar Company, at $12.25 per share, $3,626.

In March, 1923, when the trust was set up, the common stock of the Cuban American Sugar Company was selling at $37\frac{3}{8}$ high, $31\frac{1}{4}$ low, and the Guantanamo Sugar Company common was quoted at $12\frac{3}{4}$ high and 10 low.

Elizabeth C. McCormack has now reached the age of thirty-five years, and the Fulton Trust Company is accounting, to the end that there may be distributed to her one-half of the trust fund in accordance with the terms of the will.

The trustee has " continued " to hold for seven years the sugar securities, with the result that a great loss has resulted. The common stock of the Cuban American Sugar Company has declined to less than seven dollars per share. The preferred stock of said sugar company is now quoted at fifty dollars per share, and the common stock of the Guantanamo Sugar Company at fifty cents per share.

It is the contention of the objectors that, even under their right to " continue all the investments," they have failed in their trust duty and retained highly speculative stocks.

The Fulton Trust Company, in reply, seeks to justify its retention of the stocks on the following grounds:

*First.* The decree of this court directed it to receive the stock;

*Second.* Advice of its counsel that it was entitled to hold the securities;

*Third.* That it had a right to continue to hold, so long as the sugar company looked financially sound, regardless of the price of the stock on the exchange;

*Fourth.* That it was diligent in inquiring into and examining the affairs of the companies, and sought advice from the executive committee of its board of directors and the officers of the company;

*Fifth.* That it acted in good faith.

The most that the decree of this court, dated March 14, 1923, said was that " such trust company may take over said securities." The court, in absolving the executors, offered no reflection upon the duty of the subsequent trustee. The duty of trusteeship of the trust company here commenced untrammeled and unfettered, and the burden of continuing to hold these stocks belonged to it. The trustee from that time became answerable for the conduct of the funds. The trustee was not bound to retain the stocks. The loss resulted entirely from continuing to hold the securities. It was the trust company that determined to retain the securities in the trust fund, and no one else. At no time during the period of seven years did it approach this court seeking advice or guidance with regard to the retention of said stocks.

The president of the trust company testified that counsel advised that the trustee was entitled to hold the securities and that was " our reason for holding them and the only reason." The advice of counsel will not relieve the trustee from the duty of active vigilance, nor does reliance upon the advice of counsel as to its rights and powers excuse it. (*Matter of Belcher*, 129 Misc. 218, 221, and cases cited; *Matter of Demmerle*, 130 id. 684, 691; *Matter of Hurlbut*, 210 App. Div. 456, 459.)

It was testified that men versed in finance, members of the executive committee of its board of directors, advised that the stock be held. The reports of the executive committee were not offered in evidence. The president and vice-president testified that it was their judgment that the stock should be held, even in the face of a declining market. That is not enough. The trustee may not escape responsibility by the evidence offered.

Under date of June 1, 1928, a statement entitled "A Review of Trust Investments " was sent to the beneficiary by the trustee. It was offered in evidence. It referred to the Cuban American Sugar common stock and the Guantanamo Sugar stock as follows: " The securities described below appear to be unsuitable for long term holding as trust company investments. This holding (referring now to the Cuban American Sugar common) was received at a price of $22 when this account was opened in 1923. The following year the price raised to $37\frac{7}{8}$, the highest figure it has reached since 1920, and in 1928 it fell to $18\frac{7}{8}$. Declining prices for this stock from 1924 to 1927 have accompanied unsatisfactory prices for raw sugar resulting from an over supply in world markets. In attempting to improve this situation, the Cuban Government has restricted the production of Cuban Sugar companies, and thereby further limited their profits. There appears to be large uncertainty in the prospects for these producers pending the assurance of cooperative restriction on production by other producers."

As to the common stock of the Guantanamo Company, it said that it was subject to the same conditions as Cuban American Sugar common stock. Under suggestions it said: " If any of the above securities are to be sold, it is suggested that the proceeds be reinvested, one-half in long term bonds, and one-half in mortgages and short term bonds."

The court received in evidence quotations of the common and preferred stock of the Cuban American Sugar Company, showing monthly high and low prices covering the years 1921 to 1929, as well as quotations on the common stock of the Guantanamo Sugar Company for like period.

In March, 1923, the Cuban American Sugar Company common stock was selling at high 36, low $31\frac{1}{4}$. In 1924, in January it was low 33; in December of the same year, low 29; in 1925, the middle of the year, it was down to 22 and continued at such figure. In 1926 it ranged low from 22 to 26. In 1927 it started again to fall and took a decline every month, so that in December, 1927, it was $19\frac{1}{8}$. In 1928 it continued to go down; in December it was $15\frac{3}{8}$. In 1929 it still continued to go lower so that in the month of December it had reached the low of $6\frac{7}{8}$.

There were earned per share in the fiscal year ending September 30, 1923, on common, $7.45; in 1924, $6.02; $1.16, in 1925; 39 cents in 1926; earned $1.08 in 1927; there was a loss in 1928; earned 65 cents in 1929.

The earnings and the dividends paid on the $10 shares were:

Earned $7 45. 1923 dividend — $0 75
Earned 6 02. 1924 dividend — 3 00
Earned 1 16. 1925 dividend — 2 75 part of dividend not earned
Earned 39. 1926 dividend — 1 75 part of dividend not earned
Earned 1 08. 1927 dividend — 1 00
Earned Loss 1928 dividend — 1 00 dividend not earned
Earned 65. 1929 dividend — 25

So, some of the annual dividends were paid from earnings, and others from surplus. It appears that the book value is $36 per share of the Cuban American Company common, or excluding good will, $32.

It is claimed by the accounting trustee that the company is in a strong cash and current asset position and, *if* the price of raw sugar is raised and the Cuban government *does not* keep on the restrictions on production, the company *ought to be* in a favorable position to make profits.

The trustee has dealt with this trust for the seven years at a time

when the country has been prosperous. General business has been good. There have been no general depressions. But all sugar companies have been laboring under difficulties. The most important cause for the decline has been the price of sugar. World production in sugar has been the contributing cause, as testified to by the expert witness produced by the trustee. Following the war, European countries began to produce their normal supplies, with the result that Cuba found its market severely curtailed, in spite of the fact that there has been no hold up in the growth of world consumption. Several high cost sugar producers have gone out of business, and the rest are still struggling. Added to this economic difficulty is the problem of the high sugar tariff. The high tariff has favored the home grown market. The market for Cuban sugar has diminished. It also appears that the management of the Cuban American Sugar Company is faced with a refunding problem of its bonds. The solution of the refunding problem is not now definitely assured.

Under such related conditions the common stock of the Cuban American Sugar Company could hardly be considered to be other than highly speculative. These factors justify the decline in the market price which has taken place in this stock. It can be said that, as a speculation grossly approximating a gamble, the stock might be retained.

All of the above-stated facts were known to the officers, directors and the executive committee of said Fulton Trust Company. They testified that they had received the reports sent out by the company. I assume it was from such reports that it predicated its "A Review of Trust Investments," sent to the beneficiary on June 1, 1928.

The question before the court is, even though the testator authorized the trustee to continue its investments, was the trustee justified in so doing, or is it guilty of negligence? The primary duty of a trustee is to *preserve the trust funds* and procure a safe and just income therefrom.

What is the measure or standard of duty which the Fulton Trust Company owed to the beneficiaries? Has it failed?

The burden of proof is upon the party seeking to surcharge to show negligence in failing to sell. (*Matter of Wagner*, 40 Misc. 490.)

The law imposes upon trustees a duty to employ such diligence prudence, sagacity and vigilance in the care and management of an estate as prudent men of discretion employ in their own like affairs. " This necessarily excludes all speculation, all investments for an uncertain and doubtful rise in the market, and, of course, everything that does not take into view the nature and object of

the trust, and the consequences of a mistake in the selection of the investment to be made.

" It, therefore, does not follow, that, because prudent men may, and often do, conduct their own affairs with the hope of growing rich, and therein take the hazard of adventures which they deem hopeful, trustees may do the same; the preservation of the fund, and the procurement of a just income therefrom, are primary objects of the creation of the trust itself, and are to be primarily regarded." ( *King* v. *Talbot*, 40 N. Y. 76, 86.) This rule of law has been consistently followed. (*Matter of Robbins*, 135 Misc. 220; *Matter of Belcher, supra; Matter of Hall*, 164 N. Y. 196; *Costello* v. *Costello*, 209 id. 252, 261; *Villard* v. *Villard*, 219 id. 482.)

The question of good faith is not involved. The trustee undoubtedly acted in good faith. In *Crabb* v. *Young* (92 N. Y. 56) the court said: " While trustees are thus held to great strictness in their dealings with the interests of their beneficiaries, the court will regard them leniently when it appears they have acted in good faith." Willful malfeasance is not charged against the trustee, an institution of good standing. There was no malfeasance on its part. But good faith is not the only test to be met by trustees in the care of their trusts. (*Matter of Hurlbut, supra*, p. 460.) The good faith of the trustee cannot alter its liability. Even in the face of authority to " continue " to hold, vigilance and alert judgment will be required. (*Matter of Channing*, 129 Misc. 393; *Matter of Adam*, O'BRIEN, S., N. Y. L. J., March 3, 1925; *Matter of Gude*, O'BRIEN, S., Id. June 11, 1926; Editorial N. Y. L. J., January 20, 1927.)

It has been held that investments, although speculative in character and of variable value, should neither be hastily sacrificed, nor unwisely held. (*Matter of Weston*, 91 N. Y. 502; *Hancox* v. *Meeker*, 95 id. 528; *Matter of Thompson*, 41 Misc. 420; affd., 178 N. Y. 554.)

The trustee in the instant case, even though it acted in good faith, must also have acted without negligence and employed vigilance, sagacity, diligence and prudence as in general prudent men of discretion and intelligence in like matters employ in their own affairs. (*Brown* v. *Cleveland Trust Co.*, 233 N. Y. 399, 405.) If it did not so act, it is liable to the extent of the depletion of the fund.

Did the trustee employ the degree of diligence and vigilance imposed by law, the lack of which becomes negligence? Negligence is something that is serious — flagrant — want of care, diligence and prudence. Was the trustee prudent in continuing to hold the stock in the face of a declining market, and with knowledge of the facts and conditions as above portrayed? The purpose of the trust was for a long time. The conservation of the principal was of

mighty importance. Because the securities were speculative, the degree of diligence and prudence must be of the highest order, and is greater than if such securities were so-called legal investments.

*Matter of Hurlbut* (*supra*, Second Department) was a case of losses for omission to sell stock. The court said: " I think it is conceded that where such a clause is found, clothing a trustee with discretion, he is answerable only when he has not acted in good faith and *used the care and diligence in investments which would be exercised by a reasonably careful and prudent person."*

The question, therefore, becomes one of fact. Did the trustee use that degree of care and diligence which we would expect from a trustee charged with the execution of a trust in which the rights of infants were involved?

In trust relations these days, when trust companies have entered the business, much more is expected from a corporate trustee than from the old-fashioned individual executor or trustee. Trust companies seek this character of business, claiming that they are specially qualified and financially responsible. They make a specialty of trust matters and claim to be familiar with the authority of executors and trustees as to trust investments. They have claimed that each estate and trust will receive the personal attention of one trust executive whose life work is the administration of estates and trusts, and decisions with regard to the purchase and sale of securities will be independently arrived at by these officers in consultation with investment experts. (*Matter of Hurlbut*, *supra*, p. 459.) The courts, and particularly the Surrogate's Court, vigilantly enforce the highest standard of fidelity of trustees and zealously guard the rights of beneficiaries. (*Matter of Knower*, FOLEY, S., 121 Misc. 208; *Matter of Jarvis*, 110 id. 5.)

But draftsmen of wills frequently throttle the enforcing hand of the courts by the terms of the will. They invite disaster and make it difficult to hold an improvident administration of the estate.

Whenever willmakers grant discretionary power to executors or trustees with relation to the retention of securities with varying use of words indicating the minimum and maximum of liability, unusual vigilance and prudence should be exercised by the trustees. The right to continue non-legal investments being an enlargement of the recognized rights of trustees in holding securities, acts of trustees in the retention of securities which would offend the judgment of prudent men of intelligence should be, and will be, seized upon by the courts as the reason for surcharging trustees for the protection of the immediate beneficiaries and the ultimate remaindermen of trusts.

It is the opinion of the court that the trustee did not exercise that

active diligence, prudence and high standard of care which the law exacts when it continued to hold certain of said stocks beyond the time when they should have been sold. It did not exercise the solicitude for the rights of all interested in the estate which the law imposes on trustees. Reasonable diligence, intelligence and prudence on its part in the care of this trust has not been shown, the lack of which amounts to negligence. The objectors have sustained their burden of proof.

The trustee should have sold the stocks, taken the loss, and saved itself from criticism and liability. The court will visit a surcharge against it, and will point to the month of September, 1927, as the time when the common stock of the Cuban American Sugar Company should have been sold at $20 per share by a prudent, diligent and careful trustee. Said trustee is surcharged with the difference between the present market price of $7 per share and the price of $20 per share for the Cuban American Sugar Company common stock in the amount of $16,224.

I have not surcharged the trustee with regard to the stock of the Cuban American Sugar Company *preferred* because it maintained its price until February, 1929, when it took a sudden drop to $61. In December, 1929, it was selling at $56. It is now selling at $50. The trustee should consider its sale at such price.

Said trustee is also surcharged for overholding the Guantanamo Sugar Company common stock, with the difference between the present market price of 50 cents per share and the amount of $5 per share in September, 1928, the date when said stock should have been sold, in the amount of $1,332.

The retention beyond these dates is not consonant with sound and safe discretion. The terms of the will conferred authority, but did not impose a duty to retain through every adversity.

Submit decision and decree in conformity to these views with notice to all parties appearing by counsel.