In the Matter of the Estate of WILLIAM HALL WALKER, Deceased.*

Surrogate's Court, New York County, June 27, 1930.

*Greene & Hurd*, for the trustees.

*Dean, King & Smith* [*Nathan L. Miller, Frederick P. King, Francis B. Hamlin* and *H. Bartow Farr* of counsel], for Lawyers Title and Trust Company.

*Martin Conboy* [*Frederick B. Adams, Martin Conboy* and *David Asch* of counsel], for the objectant.

*Jeremiah F. Connor*, referee.

O'BRIEN, S. This is a motion to confirm a referee's report adverse to the objections filed by Gertrude D. Walker, a beneficiary of certain trusts created under the will of decedent. The issues raised present some unusual and most interesting questions relating to the sale of 6,034 shares of Eastman Kodak Company stock, between March 23, 1922, and April 6, 1922. It is contended

* See, also, 138 Misc. 879.

that the trustees should be surcharged in the sum of $1,214,500.97, with interest. Decedent died November 29, 1917. The executors and trustees qualified December 11, 1917. *The executors' accounting was filed on February 24, 1921. No objections were made to this account. The first intermediate account was filed by the trustees on March 29, 1922. It included the period from November 30, 1920, to March 23, 1922. No objections were filed to this account, which means, among other things, that no request was made by the present objectant for either the sale or the retention of the stock which is the subject of this controversy. The account was approved by a decree dated May 19, 1922.*

The second intermediate account was dated April 13, 1923, and embraces the period from *March 24, 1922, to the date of the accounting.* The objections to this account constitute the present issues. *In both intermediate accounts the trustees charged themselves with said stock at $520 per share, the price at which they received it from the executors.* This fact is important for more than one reason. It serves to narrow the issues raised herein, for up to and including the present accounting no dissent was made by the objectant to the retention at that figure of the stock and no petition made to the court for either the sale or the retention of the stock. This second trustees' accounting discloses the sale of the entire block of Eastman Kodak Company stock at a profit which, added to its liquidated paper profit of $438,370.10, amounted to the *sum of $1,316,445.10 over the value of the stock established in the transfer tax proceeding..*

The objectant, as above indicated, insists that the trustees should have acquired a profit for the estate of $1,214,559.92; in other words, that they should have netted for the estate such a profit by selling the stock at a price at which certain blocks of such stock were sold within approximately five months. She contends that in said sale of the stock the trustees acted negligently and imprudently.

This account was filed *June 16, 1923.* Subsequently the trustees were examined by the objectant and after this examination the objections, which were not joined in by Mrs. Harriet Dana Walker, were filed by Miss Gertrude D. Walker. Literally quoted, the objections are expressed as follows: " The objections and the opposition to the confirmation of the Referee's Report are founded upon the failure of the trustees to use care, prudence or diligence n determining:

" (1) That the stock should be sold;

" (2) That it should be sold in block, thereby necessarily entailing a loss;

" (3) That it should be sold at the time it was sold; and

" (4) That the price offered them was the best obtainable."

The objections as filed, to which we shall direct our argument, are as follows:

" I. That the amount reported in Schedule AA-1 of said account as having been received on the sale or exchange of the 3,150 shares of the Eastman Kodak Company old common stock therein referred to was grossly inadequate and greatly less than the true value of such stock;

" II. That the amount reported in Schedule AA-11 of said account as having been received on the sale or exchange of the 2,884 shares of Eastman Kodak Company old common stock therein referred to was grossly inadequate, and greatly less than the true value of such stock;

" III. That the sale or exchange of said Eastman Kodak Company old common stock referred to in the two preceding paragraphs was negligently, improvidently and improperly made without any exercise on the part of the trustees of the discretion given them and with which they were charged by decedent's will as to the time for or method of disposing of such stock, and without proper effort to ascertain or obtain the fair market value of such stock at the time of such sale or exchange, or whether it was for the advantage of the trust estate to hold the stock for a longer period; that by reason of the foregoing the principal of said estate has been improperly reduced and the said estate has suffered great damage and loss in a sum in excess of Two million ($2,000,000) dollars."

In developing her argument to sustain her objections she asserts: " The objections now before the court are based on the contention that in selling the Eastman Kodak Company stock as they did the trustees acted arbitrarily and without the exercise of due prudence or discretion. Had they exhausted the information available to them and had they acted after due consideration of that information, the fact that their conclusion was later shown to have been an erroneous one would have furnished no basis for legitimate criticism had they sold the stock earlier in the course of their administration and realized even less than they did realize, their action would have been beyond objection, provided their action had resulted from a determination arrived at after consideration of all material facts then available."

Thus, both in the brief and in the oral argument, great stress was laid upon the contention that the trustees had not been alert, had not been inquisitive, had not sought information in available sources, and that if they had they would have reached a point where they would have been prepared to secure a much greater

price for the stock which they sold in March and April of 1922. The record does not sustain this claim of indifference or perfunctory attitude of disinterestedness — the court's own words being adopted to translate the contention of the objectant. On the contrary, the following may be referred to as clear proof of inquisitiveness, vigilance, alertness and a constant purpose to keep in touch with the situation so far as the common stock of the Eastman Kodak Company was concerned:

(1) Letter of Mr. Greene to George Eastman, dated December 26, 1917, which reads as follows: " The executors and trustees of this will are Lawyers Title & Trust Company and myself. We feel that it may be necessary to sell a portion of Mr. Walker's holdings of Eastman Kodak Company stock in order to provide funds for the payment of a large Federal inheritance and war tax. Mr. Walker had such confidence in you that I am taking the liberty of addressing you with the object of obtaining if possible your suggestion and advice as to the manner in which the executors should go about the sale of a portion of the estate's holdings so as to realize the best prices obtainable and at the same time not injure the market for such shares.

" I shall deeply appreciate any suggestion you may be willing to make."

And the reply of Mr. Eastman, dated January 2, 1918.

(2) The letter of Mr. Thomas E. Lannin, vice-president of the Alliance Company, Rochester, dated January 7, 1918, in reply to Mr. Greene's letter to him, which reads as follows: " As you are no doubt aware, the market on Kodak stock is very narrow, the majority of the stock being held in this city. At present, owing to talk of high taxation on excess profits, the trend of the New York market, and the general war depression, the market on Kodak stock has had quite a sharp setback. There is some stock on the market now at 400 — there are not many buyers. In my opinion this is not a good time to sell any amount of the stock and I should be inclined to wait until after the publication of the annual statement, sometime in April. It looks to me as though the showing of the Company for the last year is going to be very good.

" We have always loaned freely on this stock, but at present, like most of the banks throughout the country, we are pretty well loaned up, owing to our carrying large amounts of Liberty Loans, but if you care to write and tell me how much you will probably need for the Federal, inheritance and war taxes, I shall be very glad to let you know if we can take care of you on a loan secured by this stock as collateral until such time as the market is in a more favorable condition for disposing of the stock.

" Awaiting your commands, I am."

(3) The letter of Mr. John Moody, president of Moody's Investors' Service, dated May 1, 1918, in reply to Mr. Greene's letter to him; Mr. Moody's letter reading as follows: " As I stated over the 'phone yesterday, the information we have on the Eastman Kodak Company is very limited *as the management has always followed the policy of keeping its affairs more or less secret.* I find on looking through our records that we have little or nothing of vital value in our files aside from what is found in the statement in our ' Public Utility and Industrial Analysis' of 1917.   *   *   *

" The most recent quotation we have on the common stock is 415 bid and on the preferred 104 bid.   These are nominal quotations but probably pretty close to the actual market."

(4) Letter of Mr. Lannin, dated August 2, 1918, to Mr. Greene reading as follows: " In regard to my making an affidavit as to the market value of Kodak stock during 1917, there can be no question but that the market value of Kodak Common Stock would drop materially if 500 to 1,000 shares were suddenly offered. I think even 100 shares would affect the market, but of course, the larger the amount offered, the greater the drop would be.   As I told you when I was in New York, the market for this stock is very narrow, most of it being handled in this city.   Before the war, there was quite an active market for it in England, but of course there is no trading in it there now, so it really leaves Rochester as the only market for it.   So far as I know, there was no sale of any large number of shares at any one time during 1917."

(5) Mr. Lannin's opinion (Trustees' Exhibit 115).

(6) Opinion of Ford & Enos of the New York Stock Exchange (Trustees' Exhibits 117, 118, 118-A, 119, 120 and 121 [S. M. 2476]).

(7) Letter of the said firm to Mr. Greene dated January 2, 1919 (Trustees' Exhibit 120 [S. M. 2487]).

(8) Letter of Charles Newcombe, one of the governors of the New York Stock Exchange, and member of the firm of Denny, Pomroy & Co. (S. M. 2446).   Said letter reads in part as follows: " They are also listed upon the Rochester, New York, stock exchange, which, however, closed shortly after the outbreak of the European war, and was closed during the periods herein mentioned.   The stocks are customarily bought and sold in the open market, but the market for them has been very narrow, and most of the shares traded in have been handled in the City of Rochester, New York, where a very large proportion of the stock is owned.   Prior to the outbreak of the war in 1914, some trading in the stock was had in England but since that time Rochester has offered the principal market for the stock although it is traded in to some extent in New York City.

" The market for both the common and preferred shares of Eastman Kodak Company has been in small lots only, and so far as I am aware, there was no sale of any large number of shares at any one time during the summer and fall of 1917 and the early part of 1918."

(9) Mr. Greene's letter to Denny, Pomroy & Co. of July 25, 1918.

(10) Mr. Greene's letter to Thomas E. Lannin, dated May 4, 1920, and Lannin's answer to said letter, dated May 7, 1920.

(11) The trustees received and noted the annual reports of the Kodak Company (S. M. 2495). They adopted the policy of selling the preferred stock.

(12) Letter from Mr. Greene to the Lawyers Title and Trust Company, dated March 16, 1921.

(13) Letter to the directors of the Eastman Kodak Company, dated March 23, 1921 (Trustees Exhibits 126 and 127), and the reply of the Eastman Kodak Company, dated March 28, 1921 (Trustees' Exhibit 128).

(14) Attendance of Mr. Greene at the New York meeting of the Eastman Kodak Company in Jersey City and his talk with Mr. Havens, vice-president of said company.

(15) Conversations between Mr. Greene and Mrs. Walker (S. M. 2520).

(16) Conference of Messrs. Greene, Bright, Stallknecht and Coggeshall (S. M. 2526).

That a clear understanding of the judgment and decision made by the trustees in March and April, 1922, may be had, it may be helpful to state here some facts about the inactivity of the stock of which testator in his will said, " The shares of this company are closely held; and, therefore, have a limited market " and of the prices at which it was sold. During the years 1914, 1915, 1916 and 1917 there was not recorded by the Stock Exchange a single transaction in this stock. During the year 1918 the executors sold 415 shares of the common stock at prices ranging from $445 to $500. In 1919 they sold 40 shares at $620 and 8 shares at $622. Late in the year 1920 there were a few sales of the stock in odd lots on the New York Stock Exchange at prices ranging from $533 to $505 per share. In 1917 the book value of the stock was $248.57 per share and the stock was appraised in the transfer tax proceeding at $447.35 per share. The sale made by the executors during the year 1918 and the small sales made in 1919 and 1920 were private sales, known as over the counter transactions. Early in the year 1922 it was announced that the directors of the company would submit to the stockholders a plan changing each share of

common stock of a par value of $100 into ten shares of common stock of no par value. Following this announcement and during the month of January, 1922, the new stock sold at an average of from $70 to $73, an equivalent of from $700 to $730 for the old stock, but the sales were limited to the equivalent of 173 shares of the old stock, and in February the prices receded to a scale between $66.50 and $69. The trustees sold on March twenty-third, 100 shares at $700 per share; on March twenty-eighth, 100 shares at $700 per share; on March twenty-ninth, 100 shares at $700 per share; on March thirtieth, 100 shares at $700 per share, and on March thirty-first, 100 shares at $695 per share. On April sixth, they sold 5,534 shares at $662.50 per share.

The record discloses a great deal of testimony taken concerning the manner in which the sale was negotiated with the brokers and the syndicate that purchased the stock. This line of inquiry, I take it, was adopted to learn if possible whether any unusual facts or factors were present and to elicit information that might be the basis of criticising the action of the trustees. For our present purpose it is not necessary to review the testimony in this respect. No dishonesty, infidelity or bad faith was charged by objectant, nor were any such elements proven, nor any semblance of them shown. The stock was sold in a block; it was sold to one purchaser, i. e., one group or syndicate. The syndicate made a profit, not an extraordinary profit, but in the face of the exploiting methods adopted in their salesmanship, an expected profit. Coming to the essence of the complaint of the objectant, viz., that a larger price, indeed that $883.38 or thereabouts per share, should have been secured by the trustees for the stock, and that, therefore, they should be surcharged an amount equal to the difference between this price and the price actually secured, a brief statement as to the basis of this concrete complaint should be made. *The objection is predicated upon the fact that the same syndicate sold between August 22, 1922, and March 6, 1923, certain institutional stock at an average price which was equivalent to a price of $883.38 per share of the old stock.* In 1921 Mr. Eastman made a gift of 5,000 shares of Eastman Kodak Company common stock to Rochester University, and a gift of another large block to Massachusetts Institute of Technology. The gift to Rochester University was matched by the General Education Board by securities based upon an equivalent to a valuation of $800 per share for each share of stock donated by Mr. Eastman. Now, objectant contends that the trustees were chargeable with knowledge of the gift to the institutions and with knowledge that Rochester University valued its stock at $800 per share, at which price the gift was matched by the General Education

Board, and is chargeable with the difference between the price of $883.50 and $662.06, the price received by the trustees. Right here it should be noted: (1) That there was no evidence of knowledge on the part of the trustees that this stock was donated upon condition that it could not be sold for less than $800 per share; nor (2) any evidence of knowledge that the gift to Rochester University was matched by another gift based upon a valuation of $800 per share, except the contention that the gifts had been published in newspapers and, therefore, should have been known by the trustees; and (3) *that objectant offered no evidence as to the fair market value of the common stock of said company at the time it was sold by the trustees, but relies upon the above contention.* But whether the trustees had this information or not, and whether they were in position to secure such information or not, they had ample authority under the will to make any decision which in their judgment was best for the preservation of the corpus of the estate. The trustees had before them on the one side the knowledge of the restrictions to so-called legal investments, controlling the action of trustees lacking testamentary freedom of discretion, and on the other side authority to continue the investments in said stock, and even with this authority and discretion they were always in danger of being surcharged for losses sustained. (See the learned opinion of Surrogate SLATER in *Matter of Clark*, 136 Misc. 881.) The trustees stood between these two extremes. Should they be penalized for having resisted the temptation embodied in the power given by the will to seek the greatest possible profits by retaining the stock for later disposal? They knew from their experience that the biggest losses on stocks occurred from overstaying the market, and that it is better to sell out too soon than too late. Their action was well within the provisions of paragraph 8 of the will which reads as follows:

" VIII. I have for many years been the owner of a large number of shares of the Eastman Kodak Company. I wish my executors and trustees to have absolute freedom of decision and action regarding the sale of such shares, and I expressly authorize them to continue to hold such shares as a part of the investment of the trust funds herein provided, so long as in their judgment it may be advisable and for the best interest of my estate so to do. From my personal knowledge of this company I have perfect confidence that the company is and probably always will be ably managed, and I caution my executors and trustees that the shares of this company are closely held, and, therefore, have a limited market, and that to throw them suddenly upon the market or in large blocks would probably result in their being sold for far less than their real value.

" I also hold certain other investments in stocks as well as selected bonds and I authorize my executors and trustees to continue to hold them in whole or in part in the investment of the funds of the trusts herein provided for."

They respected the guidance and direction of testator. They retained the stocks long enough to secure great profits and when they sold them they did not " throw them suddenly upon the market;" nor did they " throw them upon the market " " in large blocks." The sale of the block of stocks was not in the open market, but privately, as it were, to one customer. Their action was cautious, prudent, vigilant and in good faith, and by that action they preserved for the estate the huge profits which had already been garnered through their patience, their watchfulness and their sagacity. Furthermore, their action conformed with the principles laid down in innumerable authorities. (*Matter of Fidelity Loan, Trust & Guaranty Co.*, 23 Misc. 211, 218, 219; *King* v. *Talbot*, 40 N. Y. 76, 86; Dec. Est. Law, § 111, as amd. by Laws of 1928, chap. 362; Banking Law, § 239, as amd.; *Matter of U. S. Trust Company*, 189 App. Div. 75, 80; *Lawton* v. *Lawton*, 35 id. 395; *McCabe* v. *Fowler*, 84 N. Y. 314, 317; *Guaranty Trust Co. of N. Y.* v. *Steel Corporation*, 107 Misc. 720; affd., 226 N. Y. 693; *Crabb* v. *Young*, 92 id. 56, 66; *Matter of Titus*, 86 Misc. 375; Perry Trusts [7th ed.], § 445; *Matter of Wagner*, 40 Misc. 490, 491; Editorial N. Y. L. J. Jan. 20, 1927; *Matter of Weston*, 91 N. Y. 502.)

The objections to the account are overruled and the report of the referee is confirmed. Submit decree on notice.